## MILSTER v. CITY OF SPARTANBURG.

1. PARTY—MANDAMUS.—STATE is not a necessary party to a petition for mandamus presented by a citizen to enforce a right in which the State in its sovereign capacity is not concerned.

2. MANDAMUS—DEMAND.—Petition for writ of mandamus to compel corporation to pay past municipal taxes, cannot be dismissed for lack of demand and refusal.

3. MUNICIPALITIES.—Surrender by a city of an old charter and acceptance of a new one, under general laws, does not work the destruction of the former municipality or change its rights, powers or liabilities.

4. IBID.—MUNICIPAL TAXES—MANDAMUS.—That a municipality has levied and collected all taxes necessary in past years to meet its corporate purposes, is no defense by a corporation to a proceeding to require it to pay its share of taxes so levied; but a city cannot be required by mandamus to levy taxes for past years previous to the Constitution of 1895.

5. IBID.—IBID.—ESTOPPEL—LACHES.—A city council cannot bind the municipality by an act performed without authority, and the action of city council of Spartanburg in exempting a cotton mill from municipal taxation, is without authority and void. The petitioners herein are not estopped from seeking mandamus to compel the payment of past taxes because of inactivity and silence, and are not guilty of laches as to all past due taxes, as each failure of the mill company to pay was a default, but the analogy of the statute is adopted in fixing the line of unreasonable delay amounting to laches, and mill company required to pay back taxes for six years previous to the commencement of this proceeding.

6. THE DISCRETION of a Court must be guided by law, and cannot be exercised in the denial of a plain legal duty.

Proceeding in the original jurisdiction of this Court by petition by J. H. Milster and A. J. Abbott against city of Spartanburg and Spartan Mills for mandamus.

*Messrs. Sease & Hoke,* for petitioners, cite: *As to powers of the city council:* Con., art. IX., sec. 8; art. VIII., sec. 8; 23 S. C., 62; 60 Mo., 124; 20 Wall., 655; 106 U. S., 487; 16 Wall., 678; Dill. on Mun. Corp., sec. 105b; 21 S. C., 560; 16 S. C., 32. *As to estoppel—acquiescence—ratification—laches:* 23 S. C., 69; Bish. on Con., 369; 9 A. & E. Cor. Cas., 451; 60 S. C., 474; 3 Pom. Eq. Jur., sec. 1095; 27 L. R. A., 100. *Back taxes should be levied on State assessment:* 45 S. C., 462; 54 S. C., 456; 50 S. C., 338. *State is not a necessary party:* 39 S. C., 581; 48 S. C., 104; 45 S. C., 104.

*Messrs. Simpson & Bomar,* for respondents, cite: *Writ should not issue unless there is a clear legal duty:* Spell. on Inj., secs. 1369, 1370; 19 Ency., 725. *As to estoppel of petitioners:* Big. on Est., 652, 661; 11 Cyc., 446; 102 U. S., 415; 92 U. S., 110; 96 Am. Dec., 356; 57 S. C., 109; 42 S. C., 80. *As to laches:* 25 S. C., 104; 33 S. C., 279. *Granting writ is discretionary:* 2 Spell. on Inj., sec. 1371; 19 Ency., 757, 753.

*Messrs. Sanders & De Pass,* also for respondents, cite: *As to estoppel:* 2 Dill. on Mun. Corp., 4 ed., sec. 936; 68 N. Y., 23; Big. on Est., 5 ed., 685; 102 U. S., 415; 5 Bush., 230; 113 N. Y., 423; 18 Or., 21; 29 S. C., 142; 96 U. S., 258; 56 S. C., 105; 15 L. R. A., 404; 98 Ill., 415; 9 Cal., 469; 96 U. S., 341. *As to laches:* 145 U. S., 373; 168 U. S., 696; 148 U. S., 370; 80 Am. Dec., 389; 31 Kan., 736; 15 L. R. A., 406. *Mandamus is discretionary:* 139 N. Y., 14; 33 N. E., 145; 64 S. C., 566. *Writ will not issue to compel performance of act which respondent has no power to do:* 12 S. C., 82; 16 S. C., 53; Cool on Tax., 354, 726; 1 Desty. on Tax., 460, 596; Black. on Tax Title, 5 ed., sec. 298; 10 S. C., 299; High Ex. Leg. Rem., sec. 144; 77 N. C., 4. *As to demand and refusal:* 7 Rich., 322; 14 Ency., 106; 10 S. C., 299; 2 Dill. on Mun. Corp., sec. 866. *State is essential party:* 6 S. C., 126.

*Mr. Ralph K. Carson,* also for respondents, cites: *Writ would be unavailing:* 2 Spell. on Inj., sec. 1377; 2 Beach Pub. Corp., sec. 1430; Cool on Tax., 349; 63 Ia., 583; 39 Tex., 396; 2 Or., 84; Cool. on Tax., 2 ed., 348. *Repeal of tax laws ends right to levy and collect:* 88 N. C., 489; 102 U. S., 472.

December 8, 1903.   The opinion of the Court was delivered by

MR. JUSTICE WOODS.   J. H. Milster and A. J. Abbott, as residents and taxpayers of the city of Spartanburg, by their petitions filed in this Court, ask that a writ of mandamus be issued to compel the city of Spartanburg to assess unpaid taxes against Spartan Mills for thirteen years, beginning with 1890 and including 1902, amounting to $52,226.06, and to require Spartan Mills to pay the amount so assessed.   The petitions have been consolidated, and no separate discussion of them is necessary.

Jas. Y. Culbreath, Esq., was appointed referee to take the testimony and report on the issues of fact made by the return of the respondents, and his full and lucid report is sustained throughout by the overwhelming weight of the evidence.   No detailed discussion of the petitioners' exceptions to the findings of fact will be necessary, because, whatever view may be taken of the exceptions, the undisputed facts are, we think, conclusive of the case.

In 1888 a number of the citizens of Spartanburg had established in the city a cotton mill, under the charter of the Spartanburg Manufacturing Company.   The enterprise was not profitable.   The opinion was entertained by many, if not all the business men of the city, that its prosperity would be greatly advanced if a large manufacturing enterprise should be established within the corporate limits.   A mass meeting of citizens was held to consider the matter, at which the statement was made that a large enterprise would be undertaken on the foundation of the Spartanburg Manufacturing Company, on condition that the city council would

exempt all the property of the corporation, except its land, from taxation for ten years. In furtherance of the plan, the city council passed an ordinance, February 27th, 1890, providing that for the period of ten years, a sum equal to the city taxes on all the cotton mill company's property, except the land owned and used by it, should be paid to the company from the city treasury, and that the ordinance should be taken and construed as a contract with the city of Spartanburg. The Spartan Mills was induced by this ordinance to acquire the property of the Spartanburg Manufacturing Company, and, with a capital stock of $500,000, built a large cotton mill in the city, which without this inducement it would not have done. Instead of requiring a return of the property, making an assessment, and exacting payment of the taxes, and then paying to the mill company a like amount, as the letter of the ordinance directed, the city council omitted these formalities, treated the property as exempt from municipal taxation and exacted no taxes for ten years. Since the expiration of the period of ten years, taxes have been regularly paid on all the property embraced in this intended exemption.

In 1895, the directors of Spartan Mills determined to build another large mill, to be known as number two, and were inclined to locate it some miles outside of the corporate limits, on account of some advantages claimed for mills operated away from towns and cities. To induce the company to build this mill in the city, and prevent the supposed diversion of business which would result from placing it a few miles away, the city council passed another ordinance of the same import as that above recited, the exemption period being for the term of twenty years, and applicable to the proposed new mill. The terms of this ordinance were accepted, the new factory went into operation in 1897, and has paid no taxes on the property the ordinance was intended to exempt.

The evidence must convince any candid mind that the highest hopes of the result of the construction of the mills

were realized, and that their operation imparted a great impulse to the city's progress. There is no evidence that the city council or the Spartan Mills had notice of any objection to the exemptions when the second mill was built, or at any time until these petitions were filed. The first ordinance was duly published, and the exemption provided by it, seems to have been generally known to the people of Spartanburg, but no vote of the people was ever taken as to either attempted exemption. Milster testified he had known of the exemption several years—he could not tell how many, but before he commenced paying city taxes in 1898. Abbott could not say how long he had known of it. He has been paying taxes since 1879. Both petitioners have been benefitted by the erection of the mills more than the entire city taxes paid by them since the exemption has been in effect. In the petition it is alleged that the proceeding is instituted, not only for the benefit of the petitioners, but of other taxpayers of the city of Spartanburg, who have had an additional burden placed upon them by reason of the alleged unjust discrimination. Some taxpayers who appeared as witnesses for petitioners testified to their dissatisfaction with the exemption; but the referee finds that a great majority of the citizens of Spartanburg are in favor of carrying out the contract of exemption which the council attempted to make, and this conclusion is well supported by the testimony. The respondents do not in their returns or arguments take the position that the city council had the legal right to grant the exemption or rebate, but insist the writ should be refused, on the facts above stated, for several reasons, which will be separately considered.

That the State is not a necessary party to a petition for mandamus presented by a citizen to enforce a right in which the State in its sovereign capacity is not concerned, is settled by the case of *Lord* v. *Bates,* 48 S. C., 95, 26 S. E., 213.

1 The State as a sovereign has no direct interest in the collection of the municipal taxes of the city of Spar-

tanburg; only that portion of the public is concerned which is represented by the residents and taxpayers of the city.

The petition cannot be dismissed for lack of demand and refusal. If the Spartan Mills ought to have paid the taxes, and if the city of Spartanburg ought to have enforced their collection, the duty resting upon each was to the municipal public, and no one was specially charged to demand its performance; the obligation was imperative without demand. "The duty makes the demand, and the omission is the refusal." High on Extraordinary Remedies, sec. 41; Dillon on Municipal Corporations, sec. 867; *Attorney General* v. *Boston,* 123 Mass., 460.

The next position taken is, that the present city of Spartanburg did not come into existence until December, 1901, when the charter of 1880 was surrendered and the city reincorporated under the general law enacted in 1901. The last section of this statute is: "The provisions of this act shall not affect the rights and liabilities acquired by any city under a charter heretofore granted and obtained." But even without this section, the re-incorporation would not have marked the destruction of the municipality, but its continuance, with altered rights and powers as to the future; and hence would not have the effect of destroying the right of the city to collect taxes and other debts due to it under the old charter, nor prevent the enforcement of debts due by the city; nor would the right of a citizen to require the municipal authorities to collect or pay its debts have been impaired. "Accordingly, the substitution of a new municipal charter in the place of a previous charter, or a change in such a charter, in whole or in part, where substantially the same territory and the same inhabitants are concerned, will not be presumed, or be held to be the creation of a new corporation, but the assumption by the old one of new powers and privileges." 1 Dillon on Municipal Corporations, sec. 172; *Neely* v. *Yorkville,* 10 S. C., 151.

The respondents next insist that the purposes for which

municipal taxes were levied for the past thirteen years have been accomplished, and for this reason the city council cannot lawfully require the payment of any taxes the Spartan Mills may owe for those years. It is not asked that a tax shall be ordained or created— that is, *levied*, in the sense in which the word is used in art. X., sec. 3, of the Constitution of 1895. That was done by the city council for each current year. The charge is that the Spartan Mills was not required to pay its share of the taxes so levied. It is manifest that if it failed to pay taxes due to the city, it cannot claim exemption on the ground that sufficient revenue was collected from others. When the general levy is within the charter limits, one who fails to pay cannot be discharged on the ground that there is no need for his portion. The fact that the payment will make an unexpended surplus in the treasury is of no importance. This frequently happens in the ordinary course of affairs, and the only effect should be to lessen the future burdens of the taxpayers.

It should be observed, however, in this connection, that a mandamus cannot be issued requiring the city to assess property in order to collect taxes for past years. Prior to the adoption of the Constitution of 1895, the city of Spartanburg, under its charter, made an annual valuation or assessment of property for taxation, through its own tax machinery. No power is given by statute to the city to assess property for past years when it had for any cause been omitted from the assessment of those years. No such power is to be implied, for even State tax officers make assessments for back taxes only in pursuance of express and very specific statutory direction. As separate municipal assessment or valuation was required for each current year as a basis of taxation for that year, and no such assessment of the mill property was made year by year, no valid assessment for back taxes can now be made for any year before the Constitution of 1895, which made the city assessment of property the same as that for the State and county, went into effect.

The city has no machinery which it could legally put in motion to procure an assessment for these years, and the Court has no power to provide it. 2 Dillon on Municipal Corporations, sec. 763; *Ib.*, sec. 816, note; High on Extraordinary Remedies, secs. 140 and 144; *U. S.* v. *Clark Co.*, 95 U. S., 769; 1 Desty on Taxation, 466; Burroughs on Taxation, 197. Since assessment must precede payment and collection, for in no other way can the amount of the taxes be ascertained, the taxes for the years which passed before the Constitution of 1895 was adopted cannot be ascertained without legislative aid, and hence the Court cannot order the Spartan Mills to pay them.

This difficulty, of course, does not exist as to the municipal fiscal years in which the State and county assessment was the basis on which the city taxes should have been paid. As to these years, the mandamus requiring payment should issue, unless the other defenses are sufficient.

The next inquiry is, whether the city of Spartanburg and the petitioners are estopped from asserting the liability of the Spartan Mills to pay taxes for the term for which the city council undertook to give the exemption or rebate. It is true, a city may be estopped to deny the validity of acts done by its city council for a public purpose by continuing to accept the benefits of such action, but this is where the act is merely an irregular or improper exercise of power conferred by law. Where there is an entire absence of power to do what it has undertaken because the contract or ordinance is forbidden by the Constitution or statute law of the State, the council in such action does not represent the municipality, and for this reason the city cannot be estopped to deny the validity of the contract or ordinance of the council, whatever may be the loss entailed on those who have acted on the faith of the supposed power, or the incidental benefit which accrues to the residents of the city. The effort to bind the city amounts to no more than if the council had undertaken to legislate or make contracts for another municipality or for the entire State. This

3—68

conclusion is based on familiar legal principles, which apply with equal force whether the ordinances in this case be regarded attempts to exempt from taxation or donations by the council to the Spartan Mills. *Feldman* v. *City Council*, 23 S. C., 62; *Garrison* v. *Laurens*, 54 S. C., 456, 32 S. E., 696; Dillon on Municipal Corporations, sec. 445; 4 Thompson on Corporations, sec 5258. The numerous cases cited by respondents do not involve the distinction above stated, and hence are not applicable. The attempt to rebate the taxes, or exempt from taxation, were acts absolutely void of legal effect, because forbidden by sec. 8, art. IX., of the Constitution of 1868 (*Garrison* v. *Laurens*, *supra*), and because the attempted exemption or rebate was not for the public purposes of the municipality. *Feldman* v. *City Council, supra*.

There is nothing in the testimony upon which the petitioners could be held estopped. If they had participated in the efforts made to induce the mill company to build in the city, and in any way assented to the exemption or rebate as a condition and consideration, they would be within the principle laid down in *Ross* v. *Gaffney City*, 57 S. C., 105, 35 S. E., 439, and their complaint should not now be regarded; but they are charged only with inaction and silence while the mill company was investing its money on the faith of the exemption from taxation. For conduct of one party to work an estoppel, it must be shown that without such conduct the other probably would not have acted. It is agreed on all hands that the city council and the directors of the Spartan Mills thought they were making a legal contract, binding upon all the citizens of Spartanburg. It is quite clear that the mills were built not in reliance on the past or expected assent of any or all citizens as individuals, but, on the contrary, the reliance was on the contract with the city council being a protection against the future demands of individual citizens as well as of the city itself. Besides, when the contracts were made and when the money was expended by the mill company in construction, the petitioners had no

information, nor means of information, not possessed by the respondents. For these reasons, we think the mere inaction of the petitioners does not estop them. Bigelow on Estoppel, 570.

It is submitted by respondents, the Court should refuse to order the writ in the exercise of its discretion, in view of the great benefit received by the municipality and the petitioners themselves from the construction of the mills, the petitioners having for years accepted these benefits without complaint. The discretion of the Court must be guided by law, and cannot be exercised in the denial of a plain legal right. *Ex parte Mackey*, 15 S. C., 328. Whether gratitude for the incidental benefits accruing to the petitioners from the building of the mills, on the faith of the exemption, should suggest a waiver of their rights as citizens to require the payment of the taxes, is an inquiry for the consideration of the parties themselves. The Court can exercise no discretion on that ground.

The most serious question for the Court is, did the inaction and delay amount to such laches as will make the granting of the petition unjust and inequitable? *Myers* v. *Appleby*, 25 S. C., 104; *Gruber* v. *Knight*, 31 S. C., 84, 9 S. E., 692; *Cummings* v. *Kirby*, 17 S. C., 566. If so, whatever may have been the rights of the petitioners, they should not now be enforced. *Cummings* v. *Kirby*, 17 S. C., 563; Spelling on Extraordinary Relief, sec. 1382; High on Extraordinary Remedies, sec 38. In solving this question the important inquiries are: (1) was the delay unreasonable; and (2) would its natural result be injury to the party against whom the relief is sought? The action of the city council attempting to exempt the mills from taxation being absolutely void, and the city taxes having been assessed and collected for each year separately, the failure of the mills to pay became each year a separate default. We venture to think there will be no question that the delay in endeavoring to enforce the collection of taxes for the year 1890, thirteen years after

they accrued, would be unreasonable. On the other hand,
it is quite certain that a proceeding instituted in 1903 to en-
force collection of taxes of 1902 would be regarded within
the rule of due diligence. Where should the line between
these dates be drawn? It cannot be doubted, if this were
an action by the city council to recover past due taxes from
the Spartan Mills, the statute of limitations would be a com-
plete bar to the recovery of all taxes due more than six years
before the commencement of the action, for the reason that
a municipal tax is a liability created by statute and falls
within subdivision 2 of sec. 112, Code of Procedure. Dil-
lon on Municipal Corporations, secs. 668, 674; *Bristol* v.
*Washington Co.,* 177 U. S., 144; *State* v. *Certain Lands in
Redwood Co.,* 42 N. W., 478 (Minn.) We suppose the
statute of limitations was not pleaded because it was not
regarded applicable to a proceeding of this kind, under the
authority of *State ex relatione Cummings* v. *Kirby,* 17 S. C.,
566. Where, as in this case, however, an application is
made for mandamus to require the payment of an aggregate
amount arising from a distinct obligation accruing each
year for a number of years, the safe and reasonable rule is to
adopt the analogy of the statute in fixing the line of unrea-
sonable delay amounting to laches. High on Extraordinary
Remedies, sec. 30b; *People* v. *Chapin,* 10 N. E., 142 (N. Y.)
See particularly the well considered case of *State* v. *Certain
Lands in Redwood Co., supra.* The foundation of the stat-
ute of limitations is that the adjustments of business life
would be unduly disturbed by allowing stale and perhaps
forgotten demands to be pressed in the Courts. The denial
of relief on account of laches, even where there is a clear
legal right, rests on the same ground. The petitioners are
guilty of nothing tending to impair their legal rights except
inaction; but during the time of their inactivity many shares
of the Spartan Mills may have been acquired by the present
stockholders without thought of this large aggregate of
indebtedness to the city of Spartanburg. It seems, there-
fore, manifestly equitable to require the Spartan Mills to

pay only such indebtedness for taxation as would not be barred by the policy of the law as expressed in the statute of limitations, if the city had brought a direct action for its recovery.

The petitioners are, therefore, entitled to the writ of mandamus to require Spartan Mills to pay all unpaid municipal taxes on its property in the city of Spartanburg which have fallen due within six years prior to the 12th day of March, 1903, when this proceeding was instituted, but not for such unpaid taxes as fell due more than six years before that date.

It is referred to Jas. Y. Culbreath, Esq., to ascertain the precise amount of municipal taxes of Spartan Mills unpaid, which have fallen due within six years prior to March 12th, 1903. Upon the filing of his report, it is ordered that a writ of mandamus do issue commanding the Spartan Mills to pay the amount so ascertained into the treasury of the city of Spartanburg, unless exceptions shall be duly taken to the report within twenty days after filing.