9063

PALMETTO NATIONAL BANK *v.* LEXINGTON COUNTY.

(84 S. E. 1006.)

NONNEGOTIABLE PAPER.   ASSIGNMENT.   EQUITIES.

1. COUNTIES—COUNTY CLAIMS—PAYMENT.—Act March 1, 1913 (28 St. at Large, p. 245), levying the taxes for the fiscal year commencing January 1, 1913, levied for the county of Lexington two mills for the payment of outstanding claims against the county for face value and interest thereon from the date of approval, provided the owner of such claims should establish them in the .county Court of Common Pleas. The county treasurer discounted a note with a private banker and placed the proceeds to his credit on the understanding that he would buy county warrants and take them to the county treasurer, and in payment therefor receive the treasurer's check on the fund. The banker purchased claims with his own means, and, on his bankruptcy and on plaintiff bank's surrender of his claims against him, pledged them to plaintiff. *Held,* that as the fund was to be used only by the county treasurer, the county's payment of the note was not a payment of the claims, and that the banker was not bound to deliver them to the county treasurer, but might pledge them so that the plaintiff bank as pledgee might recover thereon.

2. COUNTIES — WARRANTS — RIGHTS OF ASSIGNEE — EQUITIES. — In such case, and even if the treasurer's agreement bound the private banker to deliver the warrants purchased by him to the treasurer, so that the county acquired an equity against the warrants rendering the transfer thereof null and void, it was not such an equity as would follow the nonnegotiable warrants into the hands of the pledgee acquiring them without knowledge of such agreement, who took sub-ject only those equities which existed between the county itself and the original obligees or payees of the warrants.

3. ESTOPPEL—INNOCENT PARTIES.—Such situation was also controlled by the equitable maxim that where one of two innocent parties must suffer because of the act of a third person, the loss must fall on the one who made it possible for the third person to do the wrongful act

which would cause the injury, as in this case it was the act and agreement of the treasurer which made it possible for the banker to acquire the warrants and pledge them to plaintiff.

4. APPEAL AND ERROR— REVIEW—LAW CASES.—Findings of fact in law cases are not reviewable by the Supreme Court on appeal.

Before DeVore, J., Lexington, August, 1914. Affirmed.

Action by the Palmetto National Bank against Lexington County. From judgment for plaintiff, in an action at law, defendant appeals.

The judgment appealed from was as follows:

This matter came on to be heard before me, having been marked "heard," at the Summer term of said Court and was argued this day, Messrs. Weston & Aycock representing the plaintiff, and Messrs. C. M. Efird and J. B. Wingard representing the defendant. The action is brought under the act of March 11, 1913, levying the taxes for the fiscal year commencing January 1, 1913, 28 Statutes at Large 245, wherein there is levied for the county of Lexington: "Two mills for payment of outstanding claims against the county for face value and interest thereon from the date of approval, provided the holder of such county claims shall establish such claims in the Court of Common Pleas for Lexington county," etc. It is not denied that the claims on which the action is brought are of those referred to in the complaint as held by plaintiff, and it is admitted that they were legal and valid obligations of Lexington county when the orders or warrants in evidence were issued. The defense is set up in the answer, however, that "the same have been paid by the defendant paying the note which was issued by it for the purpose of paying these said claims in the first instance." The matter was referred, by consent, to T. C. Sturkie, Esq., who has taken the testimony and reported the same to this Court.

It seems that the plaintiff in due course of business acquired these and other claims by virtue of a note dated March 5, 1912, and signed by Lexington Savings Bank, which was owned and operated by W. P. Roof. Mr. Roof, being in bankruptcy and being indebted to the plaintiff, an arrangement was effected whereby the plaintiff surrendered its claims against him and was permitted to retain the county warrants or claims in its possession. On these this action is based. On June 19, 1911, the treasurer of Lexington county discounted a note in the sum of $7,500.00 at the Lexington Savings Bank and the proceeds were placed to his credit. It was understood that Mr. Roof was to buy county warrants and, when he had acquired a batch of them, was to take them to the county treasurer and receive from him, in payment therefor, the latter's check on that fund. Mr. Roof proceeded to acquire county warrants, but instead of taking them to the county treasurer he pledged them with plaintiff as above appears. It is contended by defendant that by reason of this understanding it was Mr. Roof's duty to deliver these warrants to the treasurer, and that he had acquired them for that purpose alone, and that he consequently had no title to them capable of being transferred to the plaintiff. So it is claimed the warrants constitute no claim against the county and are already fully paid.

I cannot accede to this view. There was no agreement or understanding that Mr. Roof was to use the funds of the county in his bank in acquiring the warrants. He was to acquire them and was to be paid for them when he presented them to the treasurer. The fund was to be used only by the treasurer who was to draw his check for that purpose. It would have been contrary to the treasurer's duty to make an arrangement that would permit any other person to draw checks on county funds, and it does not appear that he made such an arrangement. Mr. Roof purchased these warrants with his own means and was in a

position to pledge them with plaintiff if he wished to do so.
Again, even if the treasurer made an agreement with Mr.
Roof which bound the latter to deliver the warrants pur-
chased by him to the treasurer so that the county acquired
an equity against the warrants which rendered a transfer
of them null and void, it was not such an equity as would
follow the warrants into the hands of the plaintiff.    These
warrants are not negotiable, as is admitted by plaintiff in
argument, but the plaintiff acquired them without knowl-
edge of any agreement between Mr. Roof and the county.
If an equity at all, it prevailed between the maker of the
obligation, to wit, Lexington county, and a holder of the
obligations who was intermediate between the maker and
the present holder who has brought the action.    Under the
authority, the county can set up against this plaintiff only
those equities which exist against the original obligees or
payees of these warrants.    In other words, nonnegotiable
paper carries along with it into the hands of a *bona fide*
holder without notice only those equities which exist
between the original parties, to wit, the obligor and the
obligee.    *Nixon* v. *English,* 14 S. C. L. (3 McCord) 589,
referred to and approved in *Perry* v. *Mays,* 18 S. C. L.
(2 Bailey) 354.    This principle is recognized, among other
cases, in the following: *Patterson* v. *Rabb,* 38 S. C. 138,
17 S. E. 463, 19 L. R. A. 831; *Maxwell* v. *Foster,* 67 S. C.
385, 45 S. E. 927; *Westbury* v. *Simmons,* 57 S. C. 481, 35
S. E. 764; *Stevenson* v. *Bethea,* 68 S. C. 246, 47 S. E. 71,
and possibly others.

This mater is also controlled by the familiar maxim in
equity that if one of two innocent parties must suffer
because of the act of a third person, the loss must fall on
the one who made it possible for the third person to do
the wrongful act which will cause the injury.    In this case
the county treasurer made the arrangement with Mr. Roof;
the plaintiff knew nothing of it, and if anybody was wronged
by him it was the act of the treasurer which made it possible

for Mr. Roof to acquire these warrants and dispose of them to the plaintiff.

It is, therefore, ordered and adjudged that the warrants herein sued on are valid and binding obligations of Lexington county; and that the plaintiff have judgment against the defendant for the sum of twenty-seven hundred fifty-eight and 79-100 dollars, together with the interest thereon from the 5th day of June, 1911; for the sum of two thousand forty-one and 67-100 dollars, with interest thereon from the 30th day of June, 1911, and for the sum of one thousand forty-eight and 37-100 dollars, with the interest thereon from the 7th day of August, 1911.

And it is so ordered.

The exceptions were·as follows:

1. His Honor, the Circuit Judge, erred in applying to the facts of this case the law of nonnegotiable instruments, the error being in treating the warrants as notes or bonds.

2. His Honor erred in not holding that the warrants sued on were simply orders on the county treasurer payable on day drawn, or at most, within the fiscal year.

3. His Honor erred in not holding that the Lexington Savings Bank, in purchasing the warrants, was using the county's money in paying for them under a contract with the county treasurer and the county supervisor to pay for them as the agent of the county, and that by such payment, the bank acquired no title to the warrants.

4. His Honor erred in not holding that the Lexington Savings Bank purchased the warrants with the money of the county under a contract to so use the funds deposited in the bank and to deliver them to the county treasurer upon demand, and that the contract was breached by the Lexington Savings Bank.

5. His Honor erred in not holding that the warrants were payable on demand, or at least during the fiscal year in which they were issued, and that when they were offered

to plaintiff as collateral to the note of the Lexington Savings Bank after the expiration of the fiscal year in which issued, this was sufficient to put the plaintiff on inquiry as to the manner in which they were held by the Lexington Savings Bank, and for the reason that county warrants could only lawfully be issued against funds in hand, and the utmost limit of the payment of such orders or warrants was January 1, 1912.

6. His Honor erred in holding that the warrants were left in the possession of the Lexington Savings Bank by the negligence of the county treasurer when he should have held that the county treasurer used due diligence in trying to get possession of them.

*Messrs. J. B. Wingard* and *C. M. Efird,* for appellant.

*Messrs. Weston & Aycock,* for respondent.

April 9, 1915.

The opinion of the Court was delivered by MR. CHIEF JUSTICE GARY.

The judgment of the Circuit Court is affirmed for the reasons therein stated; and, for the additional reason, that the findings of fact by his Honor, the Circuit Judge, are not reviewable by this Court.