## No. 9036.

## COUNTY COMMISSIONERS OF EL PASO COUNTY ET AL. v. CITY OF COLORADO SPRINGS.

1. DISTRICT COURT—*Jurisdiction.* An action by a municipal corporation against the county, to recover an assessment for a local improvement, is an action at law within the meaning of the constitution (Art. VI, sec. 11) even tho among other relief mandamus is prayed.

2. MANDAMUS—*Where the Writ Lies.* Mandamus is the only method of compelling payment of a judgment against a county.

3. JURISDICTION—*What Material To.* Where the question is one of jurisdiction merely, it is immaterial whether a cause of action is shown or not.

So in an action against a county, whether the claim was presented to the board of county commissioners had nothing to do with the question of jurisdiction.

4. COUNTY—*Liability to Action.* A county may be sued without its own consent.

5. *Special Assessment*—A county is liable for a special assessment upon its property situate within a city, made pursuant to law.

6. CONSTITUTIONAL LAW—*Local Assessments.* Under Act. XX of the constitution the powers of a municipal corporation with reference to assessments for local improvements are plenary.

7. —— *Presentment to County Board.* A city organized under Article XX of the constitution provided that assessments for local improvements, if delinquent for thirty days, should be collected by action. Held, an action for an assessment against the property of the county, lies in such case without presentment of the claim to the county commissioners.

8. DEED—*Construed.* A block of ground within the limits of a city was conveyed to the county, with the proviso that if any part thereof should be used otherwise than for a courthouse, the premises should revert to the city. Held to convey a fee simple, determinable upon the condition expressed.

9. PLEADINGS—*Waiver.* An answer to the complaint waives any irregularity in the joinder of mandamus with an action for money.

In an action against a county non-joinder of the county treasurer is waived by answer.

And all objections for want of capacity in the plaintiff, to sue.

*Error to El Paso District Court, Hon. W. S. Morris, Judge.*

*En banc.*

Mr. W. C. ROBINSON, Mr. WILLIS L. STRACHAN, Mr. O. E. COLLINS, for plaintiffs in error.

Mr. J. L. BENNETT, City Attorney; Mr. C. L. McKISSON, Mr. CLARENCE M. HAWKINS, for defendants in error.

Opinion by Mr. Justice Denison.

THE city of Colorado Springs was originally incorporated under the general legislative act, but later under Article XX of the Colorado Constitution. This article, as amended in 1912, provides, among other things, that cities may "Legislate upon, provide, regulate and control  *   *   * the assessment of property in such city or town for municipal taxation, and the levy and collection of * * * special assessments for local improvements."

By its charter, art. I, sec. 2, it is provided as follows: "The legislative, executive and judicial powers of the city shall extend to all matters of local and municipal government." "The city shall also have all powers, privileges and functions which by or pursuant to the Constitution of this state have been or could be granted to or exercised by any city of the first class."

The charter further provides that all the legislative powers of the city shall be vested in the council.

Under date of the 7th day of April, 1899, the city of Colorado Springs executed a deed to the county of El Paso, whereby, in consideration of one dollar and the agreement that no intoxicating liquors should be sold upon the property conveyed, it "granted, sold, remised, released and quit-claimed and by these presents does grant, bargain, sell, remise, release and forever quit-claim unto the said party of the second part, its successors, legal representatives and assigns, the following described lands and premises *, * *  Block 112 in the town of Colorado Springs," conditioned to revert if liquor was sold on the premises.

"Provided, however, that only so much of said block shall be used by the said county of El Paso as may be necessary for the purpose of erecting thereon a court house consisting of one building, and for necessary paths and roadways for ingress to said court house, and egress therefrom." And that the remainder of the block not so used should be appropriately kept and maintained as a public park, at the county's expense, forever.

"Provided, further, that if said block of ground or any part of it shall at any time be used otherwise than for the purpose of building and maintaining a court house thereon, unless it be for the future enlargement of said court house," then all rights conveyed by the deed should revert to the city of Colorado Springs.

"Provided, that if said county of El Paso shall fail or neglect to maintain said ground in a suitable condition for park purposes as hereinbefore set forth," then the county should pay the city $5,000 a year, which the city should use for maintaining the park.

*Habendum* to the party of the second part and its successors forever.

"Subject, nevertheless, to the conditions and reservations hereinabove named and set forth, according to the true intent and meaning thereof."

On the same day the Colorado Springs Company, a corporation which had owned the site of Colorado Springs, executed a similar deed to the county.

It is admitted that the city and the Colorado Springs Company, before the conveyance, were the owners of the block.

The county took possession and built a court house, and is still in possession, maintaining the vacant spaces in a manner suitable for a public park.

July 29, 1910, the City Council passed "An Ordinance Concerning Public Improvements," providing in detail for public improvements, and in section 7 providing that:

"When * * * the county * * * shall own any

tract of land or hold the title to any land  *  *  *  which if owned by a private person would be liable to assessment for  *  *  *  public improvements  *  *  *  an assessment shall be made against such land as though such land were the property of a private person and the  *  * * county  *  *  *  shall pay the amount of that assessment. If said assessment is not paid within thirty days * * *  suit may be brought in the District Court to enforce the collection of such assessment  *  *  *  . But no such land of the  *  *  *  county  *  *  *  shall be sold under any such judgment."

Under this ordinance the city established an improvement district including the court house block, and assessed to that block its proportion of the cost of the improvements. The city demanded the amount of the assessment from the county, and the county refused to pay, whereupon the city brought this suit and had judgment, and the county brings the case here on error.

1. It is earnestly urged and with very ingenious and plausible argument *amico curiae,* that the District Court had no jurisdiction of this cause.

The principal argument on this point is that the District Court, under the Constitution, has jurisdiction only of causes at law and in equity, and that this is neither.

We think that the categories "law" and "equity" exhaust the category "actions" unless those proceedings which were prerogatives of the crown in England and in this country are of the state (as explained in *People v. Tool,* 35 Colo. 225, 86 Pac. 224, 6 L. R. A. (N. S.) 822, 17 Am. St. 198; *People v. District Court,* 37 Colo. 443, 86 Pac. 87, 192 Pac. 958, 13 L. R. A. (N. S.) 768, and other cases) can be dominated actions, so there are no actions except at law and in equity. But be that as it may, counties may sue and be sued. G. S. 1905, §§ 1177 and 1181-3, and the present case is an action to recover money and is therefore an action at law, the joinder of mandamus does not make it less so, and therefore the District Court had jurisdiction.

If there was anything wrong in the joinder of mandamus with this action, it has been waived by answer. Mandamus is the ordinary and only method of compelling a county to pay a judgment. Whether mandamus should issue was a question for the court below. The writ was denied without prejudice and no error assigned, so that question is not before us.

Both the counsel for the defendant in error and the *Amicus Curiae* seem to be confusing the question of jurisdiction with that of the existence of a cause of action. The District Court has jurisdiction of any claims against the county, however preposterous, and, upon the question of jurisdiction, the existence or non-existence of a cause of action or defense is immaterial.

If the county had no power to incur the alleged obligation upon which the city sues, or if the city had no power to levy the assessment, then the city has no cause of action, and the court has power and ought so to determine. So of a claim not presented to the Board of County Commissioners under the statute, the question whether it was presented has nothing to do with the question of jurisdiction.

It is urged that the county is sovereign, an instrument of the sovereign state, and so not subject to the jurisdiction of the court. A county is not sovereign in the sense in which the state is sovereign, exempt from suit except by its own consent; but even the state may be sued if there be a statute.

The main question is whether the city has power to levy special improvement taxes on the county property. It claims that right both by the general law and by its charter under Article XX of the Constitution.

As to the first ground, we think the city is right. The authorities are in conflict and there is none in Colorado, so we are privileged to determine the question as we deem just in the light of the arguments and decisions.

We can see no reason why the county should not in fairness pay the assessment. If it is just to assess the private

property owners, it is just to assess the county. Why should the county have the use, for example, of the sewers, and not pay its share?

If the county is exempted, the remainder of the property owners in the improvement district must pay for an improvement, which, on the theory of special assessments, by benefiting the block, benefits all the inhabitants of the county.

One theory upon which public property is exempted from general taxation is that it is idle for the public to tax itself for the purpose of paying money to itself. This argument obviously does not apply to special assessments for segregated improvement districts, still less to the case of county property in a small improvement district.

This court has held that the exemption from taxation expressed in the Colorado Constitution does not apply to special assessments. *Denver v. Knowles,* 17 Colo. 204, 30 Pac. 1041, 17 L. R. A. 135.

And it would therefore seem inconsistent to say that they could not be enforced against the county.

If it be claimed that the law furnishes no remedy, the answer is that the law always provides a remedy to enforce any right. The proposition that any right can fail for lack of a remedy is obsolete.

The argument that the county's property is not subject to assessment because it can not be sold for the same is answered by the proposition that it is not going to be sold.

The justice of the payment has been recognized by Colorado, who by reason of her sovereignty could not be compelled to pay assessments, yet voluntarily passed an act to do so. S. L. 1917, 110.

The argument that county funds will be diverted from their lawful use is begging the questions, because the question is whether the use is lawful.

Has the county no lawful right to connect its court house with a sewer? Is it powerless to pay for the same?

It is insisted that the county is sovereign, a mere instru-

ment of sovereignty, and that taxation of it is taxation of the state, beyond the power of the city. If there is any decision which goes to that length, we do not agree with it. There is none in this state.

The arguments against the liability of the county to assessment, however forcible and logical, are all technical and, in the last analysis, based on the theory that the county is a part of the sovereignty. The opposing arguments, we think, have right and justice to support them.

Upon the second ground also we think the city is right. By Const. Art. XX the city was authorized to assume by its charter any powers which were local and municipal or "of local concern." *People v. Sours,* 31 Colo. 269, 387, 74 Pac. 167, 102 Am. St. 34 By its charter the city assumes "the legislative, executive and judicial powers in all matters of local and municipal government, and "all powers, privileges and functions which   *   *   * have been or could be granted to or exercised by any city of the first class. Art. I, Sec. 2.

The whole matter of assessment for local improvements is a "local and municipal" matter, like eminent domain for municipal purposes (see *Londoner v. Denver,* 52 Colo. 15, 27, 119 Pac. 156), and therefore within the authorized powers of Art. XX as interpreted by the decisions of this court. *People v. Sours, supra; Denver v. Hallett,* 34 Colo. 393, 83 Pac. 1066.

Indeed assessments for local improvements would seem to be typically and pre-eminently "of local concern."

The city's powers with reference to local assessments are therefore plenary.

Under these powers, on July 29, 1910, the City Council passed "An Ordinance Concerning Public Improvements," above quoted.

Here is legislation under plenary power, and it has the force of legislative enactment. The city may therefore assess and enforce the assessment against the county.

3.   The county claims that it does not own the block in

question.  Not so.  It is admitted in the pleadings that its grantors were the owners.  The deeds in proper terms convey a fee simple, determinable, however, on condition of sale of intoxicating liquor or cessation of use for a court house, and burdened with the proviso or condition that the vacant part of the block shall be kept for a park unless the court house be enlarged to cover it.

Burdens like rent and other duties are familiar attachments to ancient fees and have never been abolished, and conditions subsequent are common matters.  The right conveyed is certainly not a technical easement.

True, we should give the deed the meaning intended by the parties, but that must be derived from its contents, and when words are used which have a well recognized legal effect (in this case by statute: R. S. 1908, § 675), we must give them that effect unless there is something else in the instrument to show that another meaning was intended.  The very purpose of technical words and phrases, which is to facilitate construction by the use of words of known and fixed meaning, would be frustrated were we to do otherwise.  There is nothing in the present deeds to show that anything but a determinable fee was intended, because there is no expression inconsistent therewith.  If the grantors held the title in trust, their deeds, nevertheless, conveyed the legal estate in fee subject to the trust.  *Stevens v. Clay,* 17 Colo. 489, 50 Pac. 43, 31 Am. St. 328; *Lipschitz v. People,* 25 Colo. 268, 53 Pac. 1111; *Lewis v. Hamilton,* 26 Colo. 267, 58 Pac. 196.  In the deeds they took pains to protect the trust and the county accepted the deeds on those terms and has no other right to the land.

4.  It is claimed that the city should have presented the claim to the County Commissioners.  The record shows that the city demanded and was refused, and, whether that was enough or not, since the city under the full powers granted by its charter has provided that the assessments, if delinquent for thirty days, shall be collected by suit in the District Court, the cause of action seems unquestionable

without presentment for credit and allowance.   (Sec. 7, Ord. No. 817.)   That the city may provide for collection by suit seems to follow from *Denver v. Dumars,* 33 Colo. 94, 100, 80 Pac. 114, holding that the Legislature might provide that courts should not try certain cases, and *Londoner v. Denver, supra,* stating that a home rule city could do the same; but indeed since the city may "legislate upon, provide, regulate and control   *   *   *   the *collection* of special assessments, there can be no question, at least since the Home Rule Amendment, that it can provide the means and methods of collection, including suit in any court of competent jurisdiction.

It is claimed that the Home Rule Amendment does not apply here because it was enacted after the levy, but it ratifies and validates all that had been previously done by charter, and so, inasmuch as all that the city had done in the present matter was within the scope of local and municipal matters, it must be considered as ratified and validated.

It is objected that the city has no capacity to sue.   This question and all objections in the demurrer to the complaint, except as to jurisdiction and want of facts, including the claim that the county treasurer was a necessary party, were waived by answering over (Code 1908, § 79; *Hayden v. Patterson,* 39 Colo. 15, 17, 88 Pac. 437); but perhaps counsel's idea is that the city has no right to recover the assessment because it is not due to the city, but to some one else; if so, the question arises under the demurrer for want of sufficient facts, and not want of capacity to sue.

The city's interest in the assessment is sufficient to maintain the action, by reason of its duty either to provide for assessments or pay the bonds (*Barber Co. v. Denver,* 72 Fed. 336, 19 C. C. A. 139), or by reason of the fact that by its legislation it has provided for collection by suit after thirty days' delinquency.

The judgment should be affirmed.

Judgment affirmed.