13615

FARROW v. CITY COUNCIL OF CHARLESTON

(168 S. E., 852)

374

March, 1931.

*Mr. J. Waites Waring,* for appellant, cites:

*Mr. H. L. Erckmann,* for respondent,

April 5, 1933.

The opinion of the Court was delivered by Mr. Chief Justice Blease.

Section 3 of Act No. 695, approved March 10, 1922 (32 Stats. 1346), relating to the levying and assessment upon abutting property in the City of Charleston for the purpose of paying for permanent improvements of streets, sidewalks, etc., is as follows: "That the assessments so laid shall constitute a lien upon the property so assessed from the date the assessment roll is filed with City Treasurer until paid, coordinate with the lien for City Taxes and payment thereof may be enforced as the payment of city taxes is enforced: *Provided,* That such assessments be entered in a book kept by City Treasurer to be entitled 'Assessment Liens,' giving a description of the property and the amount of the assessment and the time or times of payment, and such other data as City Council may direct; upon default in the payment of any installment or deferred portion of any assessment, or upon default in the payment of any interest thereon as the same shall become due, then the whole assessment, with interest, shall immediately become due and collectible as city taxes, in case City Council shall, by ordinance, so provide, with such penalties and costs as are now provided, for delinquent city taxes."

Section 4 of that Act authorizes the city council of Charleston to regulate by ordinance certain matters and details with reference to the paving assessments.

The city ordinance on the subject, so far as the same is involved in this particular action, is as follows:

"Payment of paving assessments shall be enforced as is payment of city taxes and shall be subject to same penalties for delinquency.

*"City Treasurer to keep books entitled 'Assessment Liens.'*—The City treasurer shall keep a book, entitled 'Assessment Liens,' in which shall be entered by streets and blocks in appropriate columns the following items: Number, Owner, Description of Property, Date of Assessment, Amount of Assessment, How Payable, Date of Payment, Entry of Satisfaction, Box and Package, Lien and Privilege. From the date on which the said statement of assessment is filed with the City Treasurer it shall act as a lien on each specific real property thereon assessed, as provided by law."

Pursuant to the constitutional and legislative authority and the ordinances of the city, the city council, in 1925, decided to pave certain streets, among them one known as Murray Boulevard. On October 21, 1925, the assessment roll as to the paving was filed in the office of the city treasurer. Due notice of filing was given by the city treasurer, as required by law, and the assessments were confirmed by the city council on November 10, 1925.

For some reason or other, perhaps due to some litigation pending as to the paving of Murray Boulevard, the assessment roll some time thereafter was withdrawn from the office of the city treasurer and carried to the office of the city engineer. There was no entry of the assessments made in the book of Assessment Liens.

At the time of the paving of Murray Boulevard, Mrs. Lula T. Jenkins was the owner of real estate situated at the corner of that boulevard and Limehouse Street. On October 25, 1927, Mrs. Jenkins and the respondent in this action, Mr. Farrow, entered into a contract, whereby Mrs. Jenkins was to sell, and the respondent was to purchase, the mentioned property, and in the contract it was stipulated that seller would deliver a good title, free from paving assessments.

A reputable attorney of the Charleston bar, engaged by the respondent to examine the title to the property, inquired at the office of the city treasurer if there were unpaid paving

liens on the property, and was given an answer in the negative. On that report, the attorney advised the respondent that the title was good, and the respondent proceeded to pay the purchase price of the property, around $50,000.00, and took warranty title thereto.

Later, the assessment roll was returned to the office of city treasurer, and in October, 1928, the City of Charleston claimed a lien on the property purchased from Mrs. Jenkins by the respondent for paving assessments in the sum of $1,614.49. The amount was paid by the respondent under protest. He demanded repayment of the sum from Mrs. Jenkins, who refused the demand.

The respondent brought this suit to recover from the city the amount of the paving assessments he paid.

A demurrer to the complaint, interposed by the city council, was overruled by his Honor, Circuit Judge Grimball.

The cause was referred, by consent, to F. K. Myers, Esq., one of the masters in equity of Charleston County, under a general order of reference. He recommended the entry of judgment for the full amount of the payment made under protest, with interest thereon.

On exceptions by the appellant thereto, the master's report and the reasons for the conclusion he reached were approved by Judge Grimball, and, pursuant to his order, judgment against the appellant in favor of the respondent for the full amount demanded was entered up.

The appeal here is, of course, from the order of Judge Grimball, but, since he only adopted the conclusions and reasoning of the master, the report of the latter is the real thing for our consideration.

The master was "of the opinion that under the provisions of the Statute the lien attached upon the filing of the roll in the Treasurer's office and was not affected by the subsequent withdrawal of the roll, however irregular.' * * * "

There was no exception by either of the parties to that holding of the master, and accordingly the question is not

here involved; but we may say in passing that it appears to us the conclusion there announced was correct.

The general conclusion of the master in favor of the respondent was on the ground that the appellant, the city council, was "estopped by the conduct of its duly authorized officer in giving information to the plaintiff 'to the prejudice of one who in reliance upon it has changed his position in respect to the matter affected thereby.' " And that holding of the master, approved by the Circuit Judge, is challenged in this Court by the appellant.

On the authority of *Padgett v. Cunningham,* 156 S. C., 356, 153 S. E., 280, the able master, whose opinions are always highly esteemed in this Court, properly held that, since the facts of the cause were undisputed, the question whether such facts support the equitable doctrine of estoppel, available in an action at law, is a question of law for the Court. Accordingly, the appeal is entertained, although the action is one at law, where we are bound by the findings of fact of the master, approved by the Circuit Judge.

The important issue for our determination, in fact the one upon which the result of the cause must depend, relates to the authority of the city treasurer, by his acts and conduct, to bind the defendant, the city council, which, it appears, so far as the City of Charleston is concerned, is the municipal corporation of the city.

The master accepted as the important basis for his main conclusion the principle that, "A municipality can be estopped by the acts of its officers within the scope of their authority." He found as support for the announced principle certain language of 21 C. J., 1190, and some decisions of our Court to which we hereinafter advert.

With the general principle, as declared by the master, we are in accord, but we are of the opinion that the undisputed facts of the case at bar put it beyond the scope of the announced rule.

In the same section of Corpus Juris (193 d), 21 C. J., 1191, *et seq.,* there are more fully stated the proper legal principles applicable to this case, and they are supported in part, as the notes will show, by the decision of this Court in the case of *Carolina Nat. Bank v. State,* 60 S. C., 465, 38 S. E., 629, 85 Am. St. Rep., 865. There it is said: "*On the other hand it is settled that the public,* whether exercising its functions through a state or the federal government, or through a municipal corporation, county, town, township, or other governmental agency or instrumentality, *cannot be estopped by unauthorized, illegal, or fraudulent acts, admissions, conduct, or statements on the part of their officers and agents,* even though benefits to the public have accrued and been accepted; * * * Because persons dealing with public officers and agents are bound by the constructive notice of the law and the public records as to the measure of their powers and functions, the public cannot, by the representations of the officers as to this matter, be estopped to deny their authority, even when acting within the apparent scope of their official functions; and this rule applies to all persons whatsoever who deal with or claim under the municipality either directly or remotely." (Italics ours.)

We review, briefly our own cases relied upon by the master.

*Ross v. Gaffney City,* 57 S. C., 105, 35 S. E., 439, decided that a property owner and taxpayer of a town, in certain circumstances, was estopped in mandamus proceedings against the town and a private corporation from alleging the unconstitutionality of the action of the town in not requiring the private corporation to pay certain taxes. We do not think the case at all applicable here.

There was a holding by implication at least, if not one directly in point, in the case of *Chafee v. City of Aiken,* 57 S. C., 507, 35 S. E., 800, 804, that a municipality may be estopped on some occasions to deny its abandonment of a street which had been dedicated to the public. In the case,,

where it was alleged that the clerk and treasurer of the city had received taxes on the real estate in question, the Court said: "As a general rule, the fact that a municipality receives payment of taxes is a circumstances to be considered by the jury in determining whether the municipal authorities had abandoned their right to open a street which had been dedicated to the public." The estoppel, if any, claimed in the case rested, we think, however, upon the action of the city council of the city more than upon any acts of the city treasurer. The public streets of a city, under the provisions of the statutes, are subject to the supervision and control of the city council. In some instances, as it is well known, a city may close or abandon a street through and by the action of the city council. Accordingly, it is our opinion that the *Chafee case* is not decisive of the particular issue here for our determination, and really throws little light upon it.

*Greenville v. Mauldin*, 64 S. C., 438, 42 S. E., 200, related to the assessment of damages to abutting lot owners for altering the grade of a street in the City of Greenville, under certain statutes on the subject, and the acts of the city council in the matter of the assessment of such damages. It was held that the city was estopped from bringing an action to enjoin proceedings on the part of property owners after the award by the arbitrators had been made, as provided for under the statues, since the city council had appointed, under the law, an arbitrator to represent it in the assessment of damages. Clearly, the holding there was to the effect that the city was estopped by the acts of its city council, not because of any act of an official of very limited authority.

In *Milster v. City of Spartanburg*, 68 S. C., 26, 46 S. E., 539, the estoppel discussed by the Court related principally to that of certain taxpayers who sought to compel the city to enforce and levy taxes against certain private corporations. While the city was held barred because of *laches* to collect taxes, which should have been received by it many

years back, the Court expressly recognized the principle that not even a city council could bind the municipality by an act performed without authority. We find nothing in the case as to estoppel on the part of the city because of the acts of a city treasurer or other officer whose authority is entirely limited.

Neither is the case of *Grady v. City of Greenville,* 129 S. C., 89, 123 S. E., 494, 495, applicable to the case at bar. That case, in which it was held that the city was not estopped to remove a monument from a certain location in a public street, had reference to the acts of a city council, not to the acts of a minor official of the city.

We do not think that the case of *Solen Corporation v. Robertson,* 142 S. C., 56, 140 S. E., 236, has any bearing here. It related to the removal of a shed over a sidewalk in the City of Charleston. The report of the learned master in the cause, who happened to be the same master who heard this case, was adopted as the opinion of this Court. It was held that the city was not estopped to remove the shed. The testimony as to the alleged estoppel revolved around the acts of the city council.

The case of *Palmetto National Bank v. Lexington County,* 100 S. C., 452, 84 S. E., 1006, 1007, was also depended upon by the master. While the case was not one in which the rights of a municipal corporation were involved, the defendant being a county of the State, the master may have been justified in thinking the principles there announced, as applicable to a county, should also be applied to municipalities, since both counties and municipal corporations are political subdivisions of the State. The cause involved county warrants, and apparently was decided upon the principle that under a special Act of the General Assembly the county treasurer had some authority to negotiate regarding the warrants. The decision of the Court seems to have been based upon the theory that the county could set up against the plaintiff, the holder of the warrants, "only

those equities which exist against the original obligees or payees of these warrants," and that the claims, on which the action was brought, "were legal and valid obligations of Lexington County when the [orders or] warrants [in evidence] were issued." A close study of the case prevents us from thinking it of importance in considering the issue before us.

In all of the cases which we have mentioned, so far as municipalities are concerned, it is clear that, when there was any recognition of the doctrine of estoppel as being applicable to municipalities, such estoppel did not relate to acts of an officer of limited authority, but to the acts and conduct of the governing body of the municipality, the city council or town council; and at all times the Court clearly expressed the idea that the municipal corporation could only be estopped by the acts of its council when such acts were clearly within the authority of that body.

Certainly none of our cases, so far as we are advised, hold contrary to the principle "that the public * * * cannot be estopped by unauthorized * * * conduct, or statements on the part of their officers and agents," not even when the public has received and accepted benefits from such conduct or statements. 21 C. J., *supra.*

Other principles, which appeal very much to us, seem to be well stated in 10 R. C. L., 707, 708, where this language is found: "No estoppel can grow out of dealings with public officers of limited authority, and the doctrine of equitable estoppel cannot ordinarily be invoked to defeat a municipality in the prosecution of its public affairs because of an error or mistake of, or because of a wrong committed by, one of its officers or agents which has been relied upon by a third party to his detriment. So a municipality is not estopped by the unauthorized acts of its officer or agent, or by his wrongful act. Nor can an estoppel result from official fraud and corruption."

Taken in the light most favorable to the respondent, ██ the evidence in this case showed that the city treasurer, in giving the information as to the paving assessments, committed an error, and although the respondent, because of that error, may have suffered a loss, the city did not, because of the error, receive any benefit.

It was the duty of the treasurer to enter the paving assessments on the book entitled Assessment Liens, but his neglect to so do did not thereby operate to estop the city to claim the lien.

Even if the treasurer was required to make a verbal statement to the effect that there was or was not a lien for a paving assessment on certain property, his erroneous statement thereabout would not have bound the city. And there is nothing here whatever to show that the duty was imposed upon the treasurer to give verbal information as to paving assessments. He was not authorized to speak for the city in such manner.

Many of the cases relied upon by the respondent, and some also referred to by the master, related to estoppel on the part of individuals and private corporations, and touched upon the subject of *bona fide* purchasers for value without notice. We do not discuss these cases for the reason that the principles contained in them are clearly inapplicable to the issue here. This is not a case between private individuals. It is a case in which the public, one of the municipal corporations, a political subdivision of the State, a part of the State government, is concerned. The principles of the classes of cases mentioned do not ordinarily apply to the State or its political subdivisions.

"When acting in a governmental capacity, a municipality is not fettered by the laches, inattention, or failure of duty of its officials, or amenable to the rule protecting *bona fide* purchasers." *City of Beckley v. Wolford et al.*, 104 W. Va., 391, 140 S. E., 344.

The distinction between private and governmental functions of municipalities, recognized in many jurisdictions, does not obtain in this State. *Irvine v. Town of Greenwood et al.,* 89 S. C., 511, 72 S. E., 228, 36 L. R. A. (N. S.), 363. So there can be no doubt in our law that the paving of streets, through the policy of assessing the abutting property therefor, and the collection of such assessments, is a governmental function of the municipality of Charleston. The law of *bona fide* purchasers therefore, as declared in the *City of Beckley case,* seems applicable here.

If the respondent cannot recover from his grantor, under his warranty deed, the amount he paid for the paving assessments, the case is, as was eloquently argued by his counsel, a hard one. But the rights of the public, as well as the rights of one individual, are involved, and ordinarily, when these two rights conflict, the rights of the individual must yield to the rights of the public.

The judgment of this Court is that the judgment below be, and the same is hereby, reversed, and the cause remanded to the Court of Common Pleas for Charleston County for entry of judgment in favor of the appellant.

MESSRS. JUSTICES STABLER, CARTER and BONHAM concur.