### SOULIGNY v. PONCA CITY.
### No. 36081.

Supreme Court of Oklahoma.
May 25, 1954.

J. E. Burns, Jr., Ponca City, for plaintiff in error.

Geo. W. Miller, Ponca City, for defendant in error.

WILLIAMS, Justice.

This is an appeal by Earl D. Souligny, hereinafter called plaintiff, from an action of the trial court in sustaining a demurrer to the petition and entering judgment for defendant, City of Ponca City. Plaintiff filed an original and four amended petitions and a demurrer was sustained to each. Plaintiff elected to stand on his fourth amended petition and judgment was entered for the defendant. In the final amended petition it is stated:

"That on or about the 21st day of September, 1951, this plaintiff purchased a certain parcel of land situated within the corporate limits of defendant. That prior to plaintiff's purchase, plaintiff and seller agreed on a certain purchase price subject to a deduction of the amount of any special assessments on this property. That in order to determine the amounts of special assessments owing on this property, plaintiff inquired at the office of the City Clerk of the defendant for this information. At the time of such inquiry, the plaintiff informed the acting City Clerk of his intention to purchase the property, and requested that he be given the total amount of special assessments. That

the acting City Clerk, knowing of plaintiff's intention to act upon such information, informed plaintiff that the total amount of special assessments on said property were $1,410.11. That plaintiff, acting upon such information, purchased the property at the previously agreed sale price, less the amount of $1,410.11. Plaintiff, in so requesting, and defendant's acting City Clerk, in so informing, acted in the usual manner of persons seeking to learn the amount of special assessments due on property in the City of Ponca City. That plaintiff subsequently negotiated a sale under a similar agreement. That after the purchase price had been agreed on, the plaintiff's purchaser inquired as to the amount of special assessments on said property and was informed by the City Clerk that the total amount due was $2,258.92. That plaintiff in fulfilling his contract with his purchaser, sold the property less the amount of $2,258.92. That plaintiff's purchaser, after the sale had been completed, paid to the defendant all special assessments on the property. That the plaintiff, acting upon the misrepresentations of the defendant's acting City Clerk has been injured in the sum of $848.82."

This is a case of first impression in this state and we shall discuss some of the cases cited by plaintiff. In City of Shawnee v. Roush, 101 Okl. 60, 223 P. 354, this court discussed the liability of a municipality to a paying patient in a municipal hospital and followed the general rule of liability for negligent acts of a servant of the hospital. In City of Denver v. Potter, 8 Cir., 126 F. 288, plaintiff sued for damages due to destruction of a building by fire. The city was held liable because of negligence of its employees in allowing the fire to spread to the premises of plaintiff from a dump heap owned by the city. In Durkee v. City of Kenosha, 59 Wis. 123, 17 N.W. 677, an action was maintained for wrongful conversion due to an illegal tax sale. A demurrer was sustained to the petition. In the appeal it was ordered that the demurrer be overruled. In Berry v. McCormick, 91 Okl. 211, 217 P. 392, it was held that the City of Tulsa could provide by ordinance for the collection of a special assessment on real property. In City of Sapulpa v. Land, 101 Okl. 22, 223 P. 640, 35 A.L.R. 872, it was held that the City of Sapulpa under the conditions of its charter could not provide for the levy, assessment, and collection of ad valorem taxes. In Board of Com'rs of El Paso County v. City of Colorado Springs, 66 Colo. 111, 180 P. 301, it was held that the city could obtain a judgment against the county for paving assessments levied against the courthouse owned by the county.

All of these cases announce and recognize the rule that a municipality acts in two capacities: one in a governmental capacity and another in a propietary capacity. Oklahoma City v. Haggard, 170 Okl. 473, 41 P.2d 109.

In Consolidated School Dist. No. 1 of Tulsa County v. Wright, 128 Okl. 193, 261 P. 953, 56 A.L.R. 152, it is stated:

"Furnishing free motor transportation to public school children under section 10465, C.O.S.1921, by a district board of a consolidated school district, is a public governmental function, and neither said school district, nor said board, nor the individual members thereof are liable in damage for injuries to a pupil caused by the negligence of its officers, agents, or employees in the control or operation of its motor truck for such purpose, where they have acted in good faith and without malice."

In the opinion it is stated:

" * * * For example, with respect to a proper answer to questions Nos. 1 and 2 (which points we now hold to be finally determinative of this case), the plaintiff on page 11 of the brief uses the following language:

" 'In the first place, we believe that the rule is this: If a municipal corporation is in the exercise of a purely governmental function, then neither the corporation nor its governing officers

are liable in tort for injury resulting from the exercise of such strict and purely governmental function. On the other hand, it is equally true that, if the tort is committed in the exercise of a corporate or proprietary function, as distinguished from a purely governmental function, then such municipal corporation is liable in tort for such injury.'"

Both parties in effect agree that this case should be controlled by the rule quoted from Consolidated School Dist. No. 1 of Tulsa County v. Wright, supra, and each furnishes authorities in support of his position, plaintiff arguing that the act of the city clerk was in a proprietary capacity and defendant arguing that it was governmental.

Several cases, among them, Board of Com'rs of El Paso County v. City of Colorado Springs, supra, are cited to the effect that the levy and collection of street improvement assessments are of local concern. Governmental affairs of a municipality are of local concern. We are of the opinion that the question of liability does not depend upon the nature of a levy and collection for street improvement. The question is simply, Is the municipality liable for the misstatement or misinformation given to the plaintiff by the city clerk under the circumstances as stated in the above quotation from the fourth amended petition?

In Farrow v. City Council of Charleston, 169 S.C. 373, 168 S.E. 852, 856, 87 A.L.R. 981, the court had under consideration a similar question except that therein plaintiff, the purchaser, inquired if there were assessments due and was informed by the city treasurer there were no assessments. He paid the assessments later found to be due and brought an action to recover from the City of Charleston. Therein it is stated:

"Even if the treasurer was required to make a verbal statement to the effect that there was or was not a lien for a paving assessment on certain property, his erroneous statement thereabout would not have bound the city. And there is nothing here whatever to show that the duty was imposed upon the treasurer to give verbal information as to paving assessments. He was not authorized to speak for the city in such manner."

Plaintiff attempts to distinguish this case because of the following language:

"The distinction between private and governmental functions of municipalities, recognized in many jurisdictions, does not obtain in this state. Irvine v. Town of Greenwood, 89 S.C. 511, 72 S. E. 228, 36 L.R.A.,N.S., 363. So there can be no doubt in our law that the paving of streets, through the policy of assessing the abutting property therefor, and the collection of such assessments, is a governmental function of the municipality of Charleston. * * *"

We think the basis of the conclusion as stated in Farrow v. City Council of Charleston, supra, should be that the City of Ponca City is not legally bound by the information imparted by the city clerk. In Farrow v. City Council of Charleston, supra, it is pointed out that the authority of the city treasurer was limited. Such is true of a city clerk. No authority, statutory or otherwise, is cited which would sustain an action against the city on the representation made by the city clerk. The court was correct in sustaining the demurrer to the petition and entering judgment for defendant.

Judgment affirmed.