**Curtis G. THOMAS, et al., Plaintiffs,**

v.

**COUNTY of FAIRFAX, VIRGINIA, Defendant.**

**Civ. A. No. 89–1597–A.**

United States District Court, E.D. Virginia, Alexandria Division.

Oct. 20, 1992.

Gregory K. McGillivary, Thomas A. Woodley, Washington, D.C., for plaintiffs.

Susan L. Kruger, Asst. Co. Atty., Fairfax, Va., for defendant.

MEMORANDUM OPINION

ELLIS, District Judge.

I.

This case represents the second phase of summary judgment in a suit originally

brought by seventy eight (78) [1] present and former lieutenants of the Fairfax County Fire and Rescue Department (the "Department") seeking compliance with the overtime provisions of the Fair Labor Standards Act, 29 U.S.C. § 201 et seq. ("FLSA" or the "Act"). Plaintiffs claim they are nonexempt employees under the Act and are thus entitled to premium compensation for hours worked in excess of the statutory standards.[2] In response, defendant, Fairfax County ("County"), claims that plaintiffs are executive employees exempt from the Act's overtime requirements. See 29 U.S.C. § 213; 29 C.F.R. §§ 541.0 to 541.119 (1990).

This matter initially came before the Court on the parties' cross-motions for summary judgment. In Curtis G. Thomas et al. v. County of Fairfax, 758 F.Supp. 353 (E.D.Va.1991) (hereafter "Thomas I") the Court ruled that plaintiffs were not exempt executive employees under the County's pre-August 24, 1990 payment scheme because they were paid on an hourly, rather than a salary, basis. The Court therefore granted plaintiffs' motion as to the pre-August 24, 1990 period and denied the County's motion. The matter is now before the Court with respect to the post-August 24, 1990 period.[3] For the reasons stated below, the Court concludes that plaintiffs are not exempt employees because they are not paid on a salary basis under the County's new payroll system.

## II.

Much of the relevant factual background relating to the nature of plaintiffs' employment relationship with the County is set forth in the Court's opinion in Thomas I and will not be restated here. See 758 F.Supp. 353. The County's new payment scheme, however, warrants description. On August 24, 1990, Fairfax County implemented a new county-wide payroll system, the Personnel Resource Information System ("PRISM") to replace the system previously reviewed by the Court. Under PRISM, each 28-day pay cycle for shift firefighters is broken down into two, biweekly pay periods. In the first biweekly pay period, plaintiffs receive a fixed amount corresponding to payment for 106 hours regardless of the number of hours in "pay status" for that pay period.[4] But plaintiffs receive this fixed amount only if they do not miss one or more entire 24-hour shifts during this period. If plaintiffs miss one or more entire shifts in the first biweekly pay period, they are paid an amount that equals the number of hours in pay status multiplied by their hourly rate. This means that a lieutenant scheduled for 96 hours (4 shifts), who works all four shifts, is paid the fixed amount, namely 106 hours times the lieutenant's hourly rate.[5] But a lieutenant who is scheduled to work 96 hours and yet misses a 24-hour shift,

---

1. Only seventy five (75) plaintiffs remain, as three were dismissed for failure to comply with discovery.

2. The FLSA forbids an employer from employing any worker "for a workweek longer than forty hours unless such employee receives compensation ... at a rate not less than one and one-half times the [worker's] regular rate" for the excess hours. See 29 U.S.C. § 207(a)(1).

3. In Thomas I, the Court declined to grant summary judgment with respect to PRISM, the post-August 24, 1990 scheme, because of the sparseness of the record and a perceived conflict of fact in the affidavits submitted by the parties. See 758 F.Supp. at 366–67. The Court noted, however, that counsel for both parties seemed to agree that there was no genuine dispute of material fact. See id. Having now heard further oral argument and received additional submissions, the Court is convinced that there is no

dispute of fact concerning PRISM and its operation. Accordingly, this issue is ripe for summary judgment. See Rule 56, Fed.R.Civ.P.

4. As noted in Thomas I, a lieutenant is in "pay status" during the time that his or her shift is scheduled to be at the fire station. The Department has three shifts. Each shift is rotated into and out of pay status as follows: 24 hours on, 24 hours off, 24 hours on, 24 hours off, 24 hours on, 96 hours off. Given this rotation, a lieutenant typically works, and is paid for, either 96, 120, or 144 hours during any given biweekly pay period. A lieutenant is also in "pay status" if he or she is on paid leave during the time a shift is scheduled. See 758 F.Supp. at 356–57.

5. The same result obtains if the lieutenant is on paid leave for the 4 scheduled shifts.

thus working only 72 hours, is only paid for the 72 hours.[6]

In the second biweekly pay period, plaintiffs do not receive a fixed amount. Rather, plaintiffs receive an amount that fluctuates depending on the number of scheduled hours *actually* spent in pay status during the first pay period *and* the number of scheduled hours spent in pay status in the second pay period.[7] In essence, the County, in the second pay period, simply recoups any overpayment from the first pay period

if any plaintiff works fewer than 106 hours or makes up the deficiency from the first pay period if which a plaintiff works more than 106 hours.[8] PRISM, however, makes no change in plaintiffs' shift schedules, the calculation of leave benefits, or the method of overtime payment. *See* 758 F.Supp. at 364–66. Under PRISM, as under the predecessor system, plaintiffs receive overtime compensation on an hourly basis for hours worked in excess of *scheduled* work hours. As such, if a lieutenant was scheduled for

6. Note, however, that this payment arrangement, by itself, would not make the lieutenants hourly employees, provided PRISM otherwise met all of the other requirements for "salary basis" payment. The applicable federal regulations include an *exception to the general rule* that salaried employees' pay cannot be subject to deduction depending on hours worked. This exception relates to personal absences of a day or more and would likely apply to this payment arrangement. *See* 29 C.F.R. § 541.118(a)(1).

7. The Court held in *Thomas I,* that "hours worked" for purposes of the County's pre-August 24, 1990 pay system meant hours spent at the fire station, including time spent between alarms. *See* 758 F.Supp. at 361–62. There is no reason to depart from this earlier interpretation.

8. The parties stipulated to several examples that illustrate this feature of PRISM. Among the stipulated examples are the following, including the following, each of which assumes a lieutenant scheduled for 2912 hours a year and a pay of $10/hour or, as defendant contends, a total annual pay of $29,120:

(1) a lieutenant scheduled to work four shifts (96 hours) in the first bi-weekly pay period and

five shifts (120 hours) in the second pay period would receive $1,060 for the first period and $1,100 for the second period under PRISM [ ((96 + 120) – 106) × $10]. By comparison, under the pre-August 24, 1990 system the lieutenant would have received $960 for the first period and $1,200 for the second.

(2) a lieutenant scheduled to work four shifts (96 hours) in the first bi-weekly pay period and five shifts (120 hours) in the second, but who actually works only three shifts (72 hours) in the second period and is not on paid status for the two remaining shifts, would receive $1,060 for the first period and $620 for the second [ ((96 + 72) – 106) × $10]. Under the pre-August 24, 1990 system the lieutenant would have received $960 for the first period and $720 for the second.

The following table further illustrates the operation of the PRISM payroll system. This table incorporates, where denoted by an asterisk, the stipulated examples provided by the parties, including the two examples outlined above. The Court has supplied additional figures consistent with these stipulated examples, where appropriate, in order to clarify the amounts paid under PRISM.

TABLE I

| FIRST BIWEEKLY PAY PERIOD | | | SECOND BIWEEKLY PAY PERIOD | | | ENTIRE 28 DAY PAY CYCLE | |
|---|---|---|---|---|---|---|---|
| Hrs. Sched. | Sched. Hrs. Actually In Pay Status | Biweekly Base Pay | Hrs. Sched. | Sched. Hrs. Actually In Pay Status | Biweekly Base Pay | Total Sched. Hrs. Actually In Pay Status | Total Pay |
| 96 | 96 | $1,060 | 96 | 96 | $ 860 | 192 | $1,920 |
| * 96 | 96 | $1,060 | 120 | 120 | $1,100 | 216 | $2,160 |
| * 96 | 96 | $1,060 | 120 | 72 | $ 620 | 168 | $1,680 |
| * 96 | 72 | $ 720 | 120 | 120 | $1,200 | 192 | $1,920 |
| 120 | 120 | $1,060 | 120 | 120 | $1,340 | 240 | $2,400 |
| *120 | 120 | $1,060 | 96 | 96 | $1,100 | 216 | $2,160 |
| 120 | 120 | $1,060 | 96 | 72 | $ 860 | 192 | $1,920 |
| 120 | 72 | $ 720 | 96 | 96 | $ 960 | 168 | $1,680 |

Note: "Biweekly Base Pay" does not account for any overtime payments made for hours worked over the number of hours <u>scheduled</u> for a biweekly period. Under PRISM, lieutenants are paid at an hourly rate for these overtime hours. Overtime payments, if any, are reflected in the paycheck for the pay period in which the lieutenants actually worked these hours.

96 hours in the first pay period, but worked 120 hours, the County would recoup in the second paycheck overpayment for the ten hours paid over the 106 hour fixed level (106–96). Plaintiffs would still receive, however, an overtime payment in the *first paycheck* for the 12 hours of overtime (120–106) worked in this first pay period.

### III.

Federal regulations promulgated by the Department of Labor ("DOL") provide a "long" and "short" test for determining whether an employee is a "bona fide executive employee" who is exempt from the overtime provisions of the Act. *See* 29 C.F.R. § 541.1. The long test includes five requirements and is designed to apply to employees who earn at least $155 per week.[9] The short test has fewer requirements and is designed for use with a smaller group of employees, namely those who earn at least $250 per week.[10] Because it is undisputed that plaintiffs are paid more than $250 a week, the short test applies here. This test provides that employees are bona fide executives if (1) they

are compensated for their services on a "salary basis" of $250 or more per week; and (2) they are employed in a managerial capacity—i.e., their primary duty consists of management of the enterprise in which the employees are employed, and they customarily direct the work of two or more other employees. *See* 29 C.F.R. § 541.-119(a). Employees are not exempt executives unless it is shown that they fit all of the requirements of this test. *See* 758 F.Supp. at 358–59. The Court based its ruling in *Thomas I* chiefly on an examination of the "salary basis" requirement. *See* 29 C.F.R. § 541.118(a) (1990). As a result, the Court did not reach the sharply disputed question whether the other requirements of the "short test" had been met, namely whether the lieutenant's job duties were primarily managerial. A similar analysis obtains here.

■ The central question is whether PRISM provides for plaintiffs to be paid on a "salary basis."[11] The pertinent regulation provides, in part, that:

> of not less than $250 per week ... exclusive of board, lodging, or other facilities, and whose primary duty consists of the management of the enterprise in which the employee is employed or of a customarily recognized department or subdivision thereof, and includes the customary and regular direction of the work of two employees therein, shall be deemed to meet all the requirements of this section.

The "long test" applies to employees who are "compensated for [their] services on a salary basis at a rate of not less than $155 per week." Under this test, an employer must establish all five elements of the regulation.

9. The so-called "long test" is found in 29 C.F.R. § 541.1, which provides in pertinent part as follows:

§ 541.1 Executive

The term "employee employed in a bona fide executive * * * capacity" in section 13(a)(1) of the Act shall mean any employee:

(a) Whose primary duty consists of the management of the enterprise in which he is employed or of a customarily recognized department of a subdivision thereof; and

(b) Who customarily and regularly directs the work of two or more other employees therein; and

(c) Who has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring and firing and as to the advancement and promotion or any other change of status of other employees will be given particular weight; and

(d) Who customarily and regularly exercises discretionary powers; and

(e) Who does not devote more than 20 percent ... of his hours of work in the workweek to activities which are not closely related to the performance of the work described in paragraphs (a) through (d) of this section....; and

(f) Who is compensated for his services on a salary basis at a rate of not less than $155 per week ... exclusive of board, lodging, or other facilities: *Provided,* That an employee who is compensated on a salary basis at a rate

10. More requirements are imposed for employees earning $155 to $250 per week than for those earning more than $250 per week because it is more likely that the former category are non-exempt hourly employees, and hence more indicia of salaried-exempt status are necessary to establish an employee's executive status.

11. On August 19, 1992, The Department of Labor promulgated a final rule relating to the so-called docking test for determining an employee's pay status on August 19, 1992. *See* 29 C.F.R. § 541.5d (1992). Although this final rule is not at issue here, DOL's accompanying comments reaffirmed the continued vitality of the "salary basis" test as applied to public sector

An employee will be considered to be paid "on a salary basis" within the meaning of the regulations if under his employment agreement he regularly receives each pay period on a weekly, or less frequent basis, a predetermined amount constituting all or part of his compensation, which amount is not subject to reduction because of variations in the quality or quantity of the work performed. Subject to specified exceptions, the employee must receive the full salary for any week in which any work is performed without regard to the number of days or hours worked, subject also to the general rule that an employee need not be paid for any workweek in which no work is performed.

29 C.F.R. § 541.118(a). The exceptions noted in this definition permit salary deductions:

(1) when the employee absents himself from work for a day or more for personal reasons, other than sickness or accident, 29 C.F.R. § 541.118(a)(2);

(2) for absences of a day or more occasioned by sickness or disability ... if the deduction is made in accordance with a bona fide plan, policy, or practice of providing compensation for loss of salary occasioned by both sickness and disability, 29 C.F.R. § 541.118(a)(3); and

(3) for penalties imposed in good faith for major safety violations, 29 C.F.R. § 541.118(a)(5).

But deductions are not permitted for "absences occasioned by the employer or by the operating requirements of the business." 29 C.F.R. § 541.118(a)(4).

In *Thomas I,* the Court interpreted this regulation to mean, at a minimum, that a FLSA-exempt executive's pay must not bear a direct causal relationship to the quality or quantity of the work performed. More specifically, "[i]n the context of the present case, 29 C.F.R. § 541.118(a) means simply that a lieutenant's biweekly pay may not be a function of hours worked if it is to fit within the regulation." 758 F.Supp. at 360.[12] To be sure, plaintiffs, if

employees such as plaintiffs. DOL rejected public comments, including one from Fairfax County, that this test should be deleted for public sector employees. *See* 57 Fed.Reg. 37,666, 37,-673 (1992) ("Sufficient justification has not been shown in the comments to warrant eliminating the 'salary basis' requirement or making it inapplicable to public sector employees paid above some minimum 'upset' level").

12. Also pertinent in this respect are the following remarks from *Thomas I:*
This interpretation is supported by other parts of the regulations. For example, the second sentence of § 541.118(a) states that an employee must receive his full salary for any week in which he performs any work *"without regard to* the number of days or hours worked" (emphasis added). Similarly, § 541.-118(c), which provides that failure to pay the full salary in the initial or terminal week of employment is not inconsistent with a salary basis of payment, states that only in such exceptional weeks will "the payment of a proportionate part of the employee's salary for the *time actually worked"* satisfy the salary basis requirement. (emphasis added). *See also* 29 C.F.R. § 778.114(a), (b) (providing that a fixed salary may be paid for fluctuating hours, but implying by example that the salary, absent overtime, does not vary with the hours worked); 29 C.F.R. § 778.306 (stating in part that "[i]f an employee is compensated at a fixed salary for a fixed workweek and if this salary is reduced by the amount of the average hourly earnings for each hour lost by the employee in a short work week, the employee is, for all practical purposes, employed at an hourly rate of pay").

The conclusion that an FLSA-exempt executive's pay may not vary as a function of the number of hours worked is also consistent with a common-sense understanding of salaried employment. Certainly a layman would understand that a salaried executive is a person paid an amount, on a weekly or less frequent basis, that bears no relationship to the number of hours worked in any particular week. The Ninth Circuit put this point as follows:
A salaried employee is compensated not for the amount of time spent on the job, but rather for the general value of services performed. It is precisely because executives are thought not to punch a time clock that the salary test for "bona fide executives" requires that an employee's predetermined pay not be "subject to reduction because of variations in the ... quantity of work performed".... *Abshire v. County of Kern,* 908 F.2d at 486. Similarly, the Third Circuit in *Brock v. Claridge Hotel and Casino,* 846 F.2d 180, 184 (3d Cir.), *cert. denied sub nom. Claridge Hotel & Casino v. McLaughlin,* 488 U.S. 925, 109 S.Ct. 307, 102 L.Ed.2d 326 (1988), explained that
[s]alary is a mark of executive status because the salaried employee must decide for himself the number of hours to devote to a particular task. In other words, the salaried

they do not miss one or more shifts, are paid a fixed amount in the first biweekly pay period. Accordingly, there is no direct correlation between hours worked and plaintiffs' paychecks in this first pay period.

But to look only at the first pay period is too narrow a focus; it is only half the picture and does not tell the full story. The full picture, and a markedly different story, appears when the focus is broadened to include the second pay period. As already noted, a lieutenant's pay fluctuates in the second pay period depending on the number of hours a lieutenant spent in pay status in *both* the first and second pay periods. There is, therefore, with PRISM as with its predecessor, a fatal causal relationship between hours worked and pay. Nor does it matter that this causal relationship results only from the second biweekly pay period; section 541.118(a) requires that pay be unrelated to quantity of work in "each," i.e., every, pay period.[13] In fact, examination of the stipulated examples provided by the parties reveals that plaintiffs' pay for the *entire* 28–day pay cycle can be readily calculated by multiplying the actual number of hours spent in pay status by the hourly rate of pay. *See* Table I, *supra*, note 8. This is a clear indication that plaintiffs pay is causally connected to, and varies with, the number of hours worked. Thus, the County ultimately fails to demonstrate that under PRISM plaintiffs are "plainly and unmistakably within [the] terms and spirit" of the executive exemption. *See Arnold v. Ben Kanowsky, Inc.,* 361 U.S. 388, 80 S.Ct. 453, 4 L.Ed.2d 393 (1960); *Mitchell v. Kentucky Finance Co.,* 359 U.S. 290, 295–96, 79 S.Ct. 756, 759, 3 L.Ed.2d 815 (1959).[14]

This conclusion is not undermined by the Eleventh Circuit's decision in *Atlanta Professional Firefighters Union, Local 134 v. Atlanta,* 920 F.2d 800 (11th Cir.1991). There, the court held that fire captains paid on a cyclical basis were salaried, and thus qualified for the Act's administrative overtime pay exemption. The County argues that because the payment scheme at issue in that case is analytically indistinguishable from the County's pre-August 24, 1990 system, plaintiffs must, *a fortiori*, be held to be paid on a salary basis under PRISM. This argument is unconvincing.

■ To be sure, the pay schemes at issue in *Atlanta Professional Firefighters* and in *Thomas I* both involve systems in which firefighters are paid for scheduled hours worked each pay period plus overtime at an hourly rate for hours worked in

---

employee decides for himself how much a particular task is worth, measured in the number of hours he devotes to it.
758 F.Supp. at 360–61.

**13.** The County correctly notes that under PRISM one cannot multiply either the number of hours worked or hours in what the County terms a "pay status" by an hourly rate of pay and arrive at the amount of pay a lieutenant actually receives. This fact does not mean, however, that the lieutenants' pay no longer varies with shift hours. The PRISM formula makes clear that while a lieutenant's first biweekly paycheck in a 28–day cycle is constant, the second biweekly paycheck (and thus the overall monthly pay) varies according to the number of shift hours worked (or in paid leave) in the entire 28–day period. To meet the letter and spirit of the regulations, the County had only to establish a system that would provide plaintiffs with equal paychecks in both the first and second pay periods. PRISM, however, fails to do this. Rather, PRISM makes total pay a function, in some degree, of total number of hours worked.

**14.** As noted in *Thomas I,* 758 F.Supp. at 365 n. 21, the precise factual scenario presented here by both the pre-August 24, 1990 pay scheme and the PRISM system—paychecks that vary in sequence with shift hours—was neither presented nor discussed in two cases involving firefighters from nearby jurisdictions. *Hartman v. Arlington County, Virginia,* 720 F.Supp. 1227 (E.D.Va. 1989), *aff'd,* 903 F.2d 290 (4th Cir.1990); *International Assoc. of Fire Fighters, Alexandria Local 2141 v. City of Alexandria, Virginia,* 720 F.Supp. 1230 (E.D.Va.1989), *aff'd,* 912 F.2d 463 (4th Cir. 1990). In *Hartman,* the court stated as a matter of undisputed fact that "the Fire Shift Commanders are compensated on a salary basis at a rate not less than $250 per week.... The paychecks issued every two weeks are without regard to the number of days or hours actually worked." 720 F.Supp. at 1229. In *Fire Fighters Local 2141,* plaintiffs contended they were nonsalaried because they received additional pay at an hourly rate for each hour worked beyond their regular schedule. *See* 720 F.Supp. at 1232. They did not raise the structure of their base pay as a ground for nonsalaried status.

excess of scheduled hours. But while the court in *Atlanta Professional Firefighters* quotes the "salary basis" definition set forth at 29 C.F.R. § 541.118(a), it ignores all relevant authority and offers no analysis of why the fire captains' fluctuating pay was not "subject to reduction" because of variations in the number of hours worked. Instead, the entire salary basis portion of the opinion is based on the following statement:

> As the district court noted, however, the Union presented no evidence to prove that any captain ever suffered a reduction in pay for any of the reasons stated. Accordingly, we conclude that the City has demonstrated that a captain's pay is not subject to reduction because of the quality or quantity of work.

920 F.2d at 805. This is unpersuasive. To begin with, the court's conclusion is inconsistent with the plain language of § 541.-118(a), which simply provides that an employee is not salaried if his or her salary is "*subject to* reduction" because of variations in the quality or quantity of work. The regulation does not require an employee to show any *actual* reduction. For this reason, *Atlanta Professional Firefighters* is contrary to the express terms of the regulation and the clear weight of authority. For example, the Ninth Circuit has made clear that

> The dispositive factor is that under the County's policy, the employee's pay is at all times "*subject to* " deductions for tardiness or other occurrences.... Section 541.118(a) does not require that a deduction for an absence of less than a day *actually* have been made, but only that an employee's pay be "*subject to* " such a deduction.

*Abshire v. County of Kern*, 908 F.2d 483, 487 (9th Cir.1990) (emphasis in original) (citations omitted), *cert. denied*, — U.S. —, 111 S.Ct. 785, 112 L.Ed.2d 848 (1991). *See also Banks v. North Little Rock*, 708 F.Supp. 1023, 1025 (E.D.Ark.1988) (no showing of actual deductions needed); *Hawks v. Newport News*, 707 F.Supp. 212, 215 (E.D.Va.1988) (fact that policy of reducing pay is not applied to plaintiffs does not alter policy itself); *Persons v. Gresham*, 704 F.Supp. 191, 194 (D.Or.1988) (fact that employees did not allege actual instances of pay reduction does not alter fact that pay was "subject to" such deductions); *D'Camera v. District of Columbia*, 693 F.Supp. 1208, 1212 (D.D.C.1988) (test is whether pay is "subject to" a deduction, not the frequency with which pay is actually reduced); *Knecht v. Redwood City*, 683 F.Supp. 1307 (N.D.Cal.1987) (same).[15]

**15.** The conclusion of *Atlanta Professional Firefighters* with respect to § 541.118(a) was also rejected in a decision cited to the Court by plaintiffs. *See Harrison v. District of Columbia*, 30 Wage & Hour Cas. (BNA) 557, 1991 WL 104260, 1991 U.S.Dist. LEXIS 4992 (D.D.C. April 16, 1991). In *Harrison* the court granted summary judgment in favor of District of Columbia firefighters and other city employees claiming premium overtime, holding that they were not paid on a salary basis but rather "treated like hourly employees in nearly every respect." Slip op. at 13. The court relied on *Abshire* and this Court's opinion in *Thomas I*, but found *Atlanta Professional Firefighters* "of little persuasive value" because of its lack of either analysis or discussion of relevant case law. *See* slip op. at 10–11. Similarly unpersuasive is *Simmons, et al. v. City of Fort Worth*, C.A. No. 89–1597–A (N.D.Tex. June 12, 1992), a recent decision cited to the Court by defendants that follows *Atlanta Professional Firefighters*. The court in that case based the "salary basis" portion of its decision in part on the lack of evidence that any *actual* deduction had ever been made. Moreover, the court improperly placed the burden on plaintiffs to rebut defendant's contention that they were salaried employees. *See* slip op. at 15.

*Atlanta Professional Firefighters* arguably supports the County's position in one respect. The Eleventh Circuit held that although the Atlanta fire captains' pay was not constant across pay periods, they nevertheless received a predetermined amount within the meaning of the regulations. *See* 920 F.2d at 805 ("Although captains do not receive the same pay each pay period, this fact does not preclude the finding that they are paid a predetermined amount of pay for each nine-day cycle or ten-day cycle. Consequently, we conclude that captains are paid a predetermined amount."). Here, as in *Thomas I*, it is assumed, *arguendo*, that plaintiffs were paid a predetermined amount. *See* 758 F.Supp. at 361 & n. 14. Accordingly, the Court does not need to revisit this issue here.

A common sense understanding of the concept of "salary," arguably supports the view that, in keeping with a layperson's interpretation of the term "bona fide executive," "predetermined amount" means a "constant or non-varying amount." But even assuming that "predetermined amount" simply means "fixed in ad-

Here, as was the case in *Thomas I*, plaintiffs' paychecks are clearly "subject to reduction" in variation with the number of hours worked.[16] As a result, neither PRISM nor its predecessor pays plaintiffs on a "salary basis" as defined by § 541.-118(a).

■ Significantly, nothing inherent in the nature of firefighting precludes firefighters from being paid an equal, fixed amount every pay period. *See e.g., Keller v. City of Columbus, Ind.,* 778 F.Supp. 1480 (S.D.Ind.1991) (holding that firefighters paid on "salary basis" where paychecks determined by dividing yearly salary by number of pay periods). Given this, PRISM, because it makes total pay a function to some extent of total hours worked, invites the inference that the County seeks to encourage plaintiffs' attendance on their shifts by correlating their total pay with

scheduled hours worked. This is in sharp contrast, for example, to paying plaintiffs twenty six equal biweekly paychecks per year. Neither of the parties, despite being accorded several opportunities to do so, has offered any other persuasive rationale that explains PRISM.[17] While both the pre-August 24, 1990 and PRISM systems may provide an additional stimulus for the lieutenants' attendance during their shifts, this stimulus is antithetical to the concept of a bona fide executive. The Third Circuit reached precisely this conclusion in *Brock.* That case involved a payment scheme that provided a guaranteed minimum payment plus "additional" compensation that varied with the number of hours worked. The court stated that the additional compensation,

> If an incentive at all, ... does not encourage the [employee] to make better use of his time, but only to work more hours. Such encouragement is inconsis-

vance," as the Eleventh Circuit did in *Atlanta Professional Firefighters,* PRISM does not provide that plaintiffs receive paychecks for a "predetermined amount."

In *Thomas I,* the County argued that, although paychecks varied from pay period to pay period, each lieutenant could readily determine the amount by knowing the applicable shift schedule and consulting a calendar ahead of time. Under PRISM, plaintiffs can, indeed, consult a calendar and calculate their paychecks for each *first,* biweekly period. These payments are indisputably predetermined, provided plaintiffs do not miss one or more entire shifts. But plaintiffs cannot predetermine their paychecks in the *second* biweekly period. In the present case, plaintiffs' paychecks for the second biweekly period fluctuate with the number of hours they are in pay status in *both* the first and second pay periods. PRISM takes into account the number of hours a lieutenant spends in pay status in the second period, but adjusts this number by factoring in the amount of hours spent in pay status *either* above or below the 106 hour level in the *first* pay period. In fact, the second biweekly paycheck cannot be predetermined even after the first pay period because the number of hours worked in the second biweekly period will necessarily affect the amount paid. As a result, plaintiffs are not paid "predetermined" paychecks consistent with a salary basis.

**16.** None of the exceptions set forth at 29 C.F.R. § 541.118(a), detailing permissible deductions under a "salary basis" system undermine this conclusion. Section 541.118(a)(1), for example,

permits salary deductions for personal absences of a day or more. This exception, however, does not help the County here. Under PRISM, the second biweekly paycheck may be reduced if plaintiffs do not work all of their shifts in the second pay period. Since each shift lasts 24 hours the County might, under this exception, be able to claim that deduction for shifts missed would be permissible under a salary basis. But the second paycheck is also "subject to deduction" to allow the County, as established above, to recoup any overpayment from the first pay period, in which plaintiffs are paid for 106 hours, but may have worked less. As a result, the second paycheck is subject to deductions for variations in hours worked in *both* pay periods, and these deductions are impermissible under the regulations.

**17.** More specifically, the County submitted a statement of policy rationale and several supplemental statements regarding PRISM. The former described the PRISM system and noted that it provides a more even series of paychecks for twenty-four hour shift employees, but did not explain the reason why the lieutenants' pay should vary at all instead of being constant. In its supplemental statements the County concluded, perhaps for entirely legitimate reasons, that it could not provide a single explanation for the adoption of PRISM. In addition, the County argued that in order to pay plaintiffs on a salary basis it would have to establish a new and separate pay system for fire lieutenants. Administrative convenience, however, cannot justify violations of the FLSA.

tent both with salary payment and executive employment.

846 F.2d at 185.

 The County's shift to PRISM also fails to provide a convincing basis on which to conclude that plaintiffs are paid on a salary basis because the parties agree that PRISM made no change in most aspects of the County's pay system. In *Thomas I*, the Court noted that the obvious inference to be drawn from the variations in the lieutenants' biweekly paychecks was supplemented by several indicia of hourly status, including (i) the fact that the County schedules plaintiffs for a fixed annual number of work hours, (ii) the County's practice of providing plaintiffs with "overtime" pay at an hourly rate for hours worked beyond their regularly scheduled time, and (iii) the County's practice of docking certain lieutenants one hour of leave during the transition to daylight savings time. *See* 758 F.Supp. at 364–66. The PRISM system eliminates none of these supplemental factors. As the Court noted in *Thomas I*, these features, while not alone determinative, are inconsistent with payment on a "salary basis." *Id.*

## V.

For the reasons stated above, the Court concludes that plaintiffs are not paid on a "salary basis" and therefore are not subject to the bona fide executive exemption under the FLSA. Although PRISM comes closer than its predecessor in paying plaintiffs on a salary basis, it still fails to satisfy the County's burden of rebutting the "presumption of coverage" established by the FLSA. *See Schultz v. W.R. Hartin & Son, Inc.*, 428 F.2d 186, 189 (4th Cir.1970); *see also Corning Glass Works v. Brennan*, 417 U.S. 188, 196–97, 94 S.Ct. 2223, 2229, 41 L.Ed.2d 1 (1974) (burden of proving exemption's application on employer); *Powell v. United States Cartridge Co.*, 339 U.S. 497, 516, 70 S.Ct. 755, 765, 94 L.Ed. 1017 (1950) ("breadth of coverage" is "vital to [the Act's] mission"). Accordingly, the Court grants summary judgment in favor of the plaintiffs and awards retroactive overtime pay for the post-August 24, 1990 period.

An appropriate order will issue.