**Buddy R. CARTER, Jr., et al., Plaintiffs,**

v.

**CITY OF CHARLESTON, SOUTH CAROLINA, Defendant.**

**No. 2:96–2508–18.**

United States District Court,
D. South Carolina,
Charleston Division.

Aug. 20, 1997.

Thomas Woodley, Washington, DC, K. Douglas Thornton, Georgetown, SC, for Plaintiffs.

Frances I. Cantwell, Allan Holmes, Charleston, SC, for Defendant.

## ORDER

NORTON, District Judge.

This action is before the court on Plaintiffs' Motion for Summary Judgment.

### I. Background

The 108 Plaintiffs are current or former fire fighters employed by the City of Charleston ("Defendant"). They filed this action against Defendant, alleging Defendant has failed to comply with the wage and hour requirements of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 207.

Specifically, Defendant has treated Plaintiffs as fire protection employees and sought to use the overtime exemption applicable to fire fighting personnel pursuant to 29 U.S.C. § 207(k). Under that statutory scheme, fire fighters only receive overtime compensation after working 53 hours in a 7–day work period (or after 212 hours in the maximum 28–day work cycle).

A further exemption, the "sleep time" exemption, allows a public agency employer, such as Defendant, to exclude a fire fighter's on duty "sleep time" when calculating the hours for overtime compensation. Under the limited exemption, a public agency employer is permitted to exclude a fire fighter's on-duty "sleep time" as noncompensable hours if two conditions are satisfied: (1) if the fire-fighters work a tour of duty (or shift) of more than 24 hours and (2) if there is an express or implied agreement between the employee and the employer to exclude the sleep time. 29 C.F.R. § 533.222(b) and (c).

Under Defendant's current practice, a Plaintiff generally works five 24–hour shifts in a typical 14–day work cycle, for a total of 120 hours. Barring an interruption in a Plaintiff's sleep, Defendant excludes five hours of sleep time, from 1 a.m. to 6 a.m., from a Plaintiff's compensable hours. Thus, a Plaintiff receives straight time pay for 95 hours of work during a typical 14–day work

cycle. Because the FLSA does not require payment of overtime for 106 hours or less in a 14–day work cycle, a Plaintiff receives little (if any) overtime payments when Defendant deducts sleep time from compensable hours.

Plaintiffs contend they have worked tours of duty of exactly, not more than, 24 hours. Thus, Plaintiffs argue Defendant should have included their sleep time over the past twelve years when calculating their compensation and overtime payments.[1]

Defendant argues that Plaintiffs' tours of duty are, and have been since 1985, scheduled for periods of time greater than 24 hours. Specifically, pursuant to written policy, Plaintiffs' tours of duty are supposed to be scheduled for 24 hours and 15 minutes. Defendant also asserts that there is an implied agreement between the parties to exclude five hours of sleep time from Plaintiffs' compensable time. Plaintiffs deny any implied agreement to exclude sleep time.

Additionally, Defendant contends that Plaintiffs occupying the position of captain are "executive or administrative" employees exempt from the FLSA overtime protections. Plaintiffs contend that the captains are hourly paid, not salaried, employees and, thus, do not qualify as executive or administrative employees.

In their summary judgment motion Plaintiffs request overtime compensation for overtime hours worked above 106 hours in the 14–day work period; regular, straight time pay for the uncompensated, non-overtime hours above 95 but below 106 in the 14–day work periods; a third year of backpay because of Defendant's allegedly knowing violation of the FLSA; and liquidated damages.

## II. Analysis

### A. Sleep Time Exemption

Generally, under the Fair Labor Standards Act ("FLSA") employers must pay employees overtime compensation for hours worked in excess of 40 hours per week. 29 U.S.C.

§ 207(a). However, the FLSA provides exceptions to the customary 40–hour overtime standard for employees engaged in fire protection activities. 29 U.S.C. § 207(k). Fire fighters are entitled to overtime compensation only after they work 53 hours in a 7–day work period or, as in this case, after they work 106 hours in a 14–day cycle. 29 U.S.C. § 207(k); 29 C.F.R. § 553.230.

In determining the overtime hours for which a fire fighter must be compensated, the FLSA provides a further exemption which allows an employer to exclude time during a fire fighter's shift as noncompensable, the "sleep time" exemption. See 29 C.F.R. § 553.222(b) & (c). The "sleep time" exemption provides as follows:

(b) Where the employer has elected to use the section 7(k) exemption, sleep time cannot be excluded from the compensable hours of work where (1) the employee is on a tour of duty of less than 24 hours, which is the general rule applicable to all employees under § 785.21 and (2) Where the employee is on a tour of duty of exactly 24 hours, which is a departure form the general rules in Part 785.

(c) Sleep time can be excluded from compensable hours of work, however, in the case of police officers or fire fighters who are on a tour of duty of more than 24 hours, but only if there is an express or implied agreement between the employer and the employees to exclude such time.

29 C.F.R. § 553.222(b) & (c).

Exemptions to the FLSA overtime requirements are to be narrowly construed against the employer asserting them, and the employer carries the burden of proving by clear and affirmative evidence that it is entitled to the exemption. *Johnson v. City of Columbia*, 949 F.2d 127, 129–30 (4th Cir. 1991)(en banc); *Rotondo v. City of Georgetown*, 869 F.Supp. 369, 373 (D.S.C.1994).[2] Furthermore, to take advantage of the "sleep

---

1. For example, if Defendant did not exclude sleep time from a Plaintiff's compensable hours, a Plaintiff would generally be entitled to compensation for 120 hours during a 14–day work cycle. Pursuant to the FLSA, Plaintiff would be entitled to overtime, at time and one-half his regular rate of pay, for the 14 hours worked over 106 hours.

2. The Department of Labor's ("DoL") regulations which create an exemption that is not set forth in the statutory provisions enacted by Congress, like the "sleep time" exemption, must be "very narrowly construed" to avoid employer abuse of the employee's statutory rights. *O'Neal v. Barrow County*, 980 F.2d 674, 677 (11th Cir. 1993).

time" exemption, the employer must show that each of the criteria governing that exception is satisfied. *Walling v. General Industries, Inc.*, 330 U.S. 545, 547–48, 67 S.Ct. 883, 91 L.Ed. 1088 (1947); *Thomas v. Fairfax County of Virginia*, 758 F.Supp. 353, 359 (E.D.Va.1991).

■ Defendant has not proven that Plaintiffs' tours of duty are for more than 24 hours. *See* 29 C.F.R. § 553.222(c). Until very recently no Plaintiff has ever been on a tour of duty for more than 24 hours. Rather, at all times since 1985, they have been assigned to tours of duty of "exactly 24 hours." For example, former Fire Chief Wilmot Guthke (chief from 1985 to January 7, 1992) and Fire Chief Russell Thomas (chief since January 8, 1992) testified that the fire fighters have always been on tours of duty of precisely 24 hours.

Furthermore, the practices within the fire department indicate the fire fighters worked 24-hour shifts. The daily house journals compiled at each fire station show that fire fighters were on duty 24 hours; the accounting of personnel present at the stations occurs at 8:00 a.m.; the day and night watches are from 8:00 a.m. to 8:00 a .m.; the substitution of replacements and the detailing of fire fighters to other stations is for the 24–hour period. A fire fighter showing up after 8:00 a.m. is considered late for work and subject to discipline.

Additionally, job advertisements published by Defendant and its Personnel Department, such as the City of Charleston Job Vacancy Listing for June 24–28, 1996, state that the fire fighter's work schedule is 24 hours on duty and 48 hours off duty. During the hiring/employment process in the fire depart-

ment, new-hires are informed about and assigned to 24–hour shifts.

Defendant does not dispute that Plaintiffs actually worked only 24 hours on each shift. Rather, Defendant argues that it adopted a written policy, as long ago as 1985, establishing that a fire fighter's shift is for 24 hours and 15 minutes. Although the fire chiefs may have allowed Plaintiffs to leave after working only 24 hours, they were allegedly required to work for 24 hours and 15 minutes.[3]

Defendant asserts that the city council's written policy, and not the practice of the fire department should control. The powers of a municipality, such as Defendant, are vested in its council, which is empowered to provide for the performance of all duties imposed on the municipalities by law. S.C.Code Ann. § 5–7–160 (Supp.1992). Personnel policy is set by council, not its employees. *See* Code of the City of Charleston, § 2–87. The council's written personnel policy for fire fighters establishes their tour of duty at 24 hours and 15 minutes.

■ Defendant urges that the fire chief did not have the authority to allow fire fighters to leave early and that Plaintiffs cannot impute the actions of the fire chief to Defendant. Estoppel will not lie against a governmental body for an ultra vires act, or for unauthorized, illegal or fraudulent acts, admissions, conduct or statements on the part of its officers or agents. *Patterson v. Goldsmith*, 288 S.C. 551, 343 S.E.2d 661 (Ct.App. 1986); *Farrow v. City Council of Charleston*, 169 S.C. 373, 168 S.E. 852 (1933).

However, other than passing or approving a policy requiring fire fighters to work shifts of 24 hours and 15 minutes, there is no

---

3. Defendant also implies that Plaintiffs simply left early when they should not have. Defendant contends that it did not derive any benefit from the 15 minute periods that Plaintiffs did not work. Defendant asserts that the FLSA does not require it to compensate employees for time they did not work. Thus, according to Defendant, an appropriate remedy would be to compensate Plaintiffs for the 15 minutes of each scheduled tour of duty during which Defendant anticipated that Plaintiffs would work but they did not. (Defendant's Opposition Memorandum, p. 13).

However, Defendant assumes that it has met its burden of proof with respect to the sleep time

exemption requirements, i.e. that Plaintiffs worked tours of duty greater than 24 hours and that they had an implied agreement that sleep time could be considered noncompensable hours. If, as it appears, Plaintiffs have been working tours of duty for 24 hour periods and not 24 hour/15 minute periods, then Defendant never should have deducted sleep time from Plaintiffs' compensable hours. In that case, Defendant has actually been the one to benefit by not paying Plaintiffs for 5 hours in which they were considered to be working according to the FLSA.

evidence that the council or any employee of Defendant ever took any measures to insure this policy was implemented and followed. Thus, council is as responsible, if not more, for the failure to implement and/or enforce written policy.

Defendant, at least tacitly, has agreed to 24–hour shifts. For twelve years Defendant has allowed the fire chief to set 24 hour tours of duty. For twelve years shifts have begun at 8:00 a.m. and ended at 8:00 a.m. the following morning. Despite council's written policy requiring fire fighters to work shifts of 24 hours and 15 minutes, it appears this policy was never implemented.[4] For over twelve years Defendant has done nothing to insure that council's written policy was being implemented or followed.

Defendant offers no reasonable explanation for the Personnel Department's job vacancy listing which describes a fire fighter's work schedule as "24 hours on/48 hours off." Perhaps most telling is the June 20, 1997 memo to all fire personnel from Fire Chief Thomas directing that fire department employees are now to be placed on tours of duty of 24 hours and 15 minutes:

> PURSUANT TO CITY ORDINANCE, TOURS OF DUTY ARE SCHEDULED FOR THE FIRE DEPARTMENT FOR 24 HOURS, 15 MINUTES ON DUTY, AND 47 HOURS, 45 MINUTES OFF DUTY. TOURS OF DUTY BEGIN AT 7:45 A.M.
>
> CONSISTENT WITH THE CITY ORDINANCE, EVERY EMPLOYEE SCHEDULED FOR A TOUR OF DUTY IS REQUIRED TO REPORT TO HIS OR HER STATION AT 7:45 A .M., AND TO REMAIN THERE UNTIL THE END OF THE TOUR WHICH IS 8:00 A.M. THE FOLLOWING MORNING. NONCOMPLIANCE WITH THIS REQUIREMENT MUST BE ELIMINATED BY 7:45 A.M., FRIDAY, JUNE 20, 1997.

This memo indicates that council's policy has not previously been followed, and is an attempt to insure the implementation of the 24 hour/15 minute tour of duty for fire fighters. Prior to June 20, 1997, there is nothing to indicate that council's policy requiring tours of duty of 24 hours and 15 minutes has ever been implemented or enforced.

As indicated above, exemptions to overtime requirements are to be narrowly construed against the employer. Furthermore, the employer has the burden of proving compliance with the exemption's requirements. The only evidence Defendant has offered of its compliance with the sleep time exemption's requirement that an employee work a tour of duty for more than 24 hours is the council's unenforced written policy requiring that tours of duty be 24 hours and 15 minutes.

Viewing the facts in the light most favorable to Defendant, the court cannot conclude that a written policy requiring fire fighters to work shifts greater than 24 hours, which prior to June 20, 1997, had never actually been implemented, is enough to demonstrate that Plaintiffs have worked tours of duty greater than 24 hours over the past twelve years.

Because Plaintiffs have not worked shifts greater than 24 hours, it is not necessary to address the second overtime exemption requirement that there be an implied or express agreement to exclude sleep time hours from the number of compensable hours. Accordingly, summary judgment is granted to Plaintiffs on their request that sleep time not be excluded from their compensable hours.

### III. Executive/Administrative Employee

■ Defendant argues that Plaintiffs who occupy the position of captain are executive or administrative employees exempt from the FLSA's overtime protections. 29 U.S.C. § 213(a)(1).

■ Under § 213(a)(1) "any employee employed in a bona fide executive, administrative or professional capacity" is exempt from the overtime pay requirements of 29 U.S.C.

---

**4.** Interestingly, Defendant acknowledges that the 15 minutes over 24 hours that Plaintiffs were to remain at the fire station was not included when calculating Plaintiffs' compensation. (Defendant's Opposition Memorandum, p. 8 n. 5). Instead of admitting that Plaintiffs' compensation was calculated based on 24 hour shifts and not 24 hour/15 minute shifts, Defendant argues that the failure to include the 15 minutes was simply a mistake and resulted in erroneous overtime calculations for some Plaintiffs, which can easily be remedied by paying them for the 15 minute periods they were not paid.

§ 207(a). The burden of proving that Plaintiffs are exempt from the overtime requirements is on Defendant. *Corning Glass Works v. Brennan,* 417 U.S. 188, 196–97, 94 S.Ct. 2223, 41 L.Ed.2d 1 (1974). As earlier noted, overtime exemptions are construed narrowly, against the employer. *Avery v. City of Talladega,* 24 F.3d 1337, 1340 (11th Cir.1994). The burden must be established by clear and affirmative evidence. *Clark v. J.M. Benson Co.,* 789 F.2d 282 (4th Cir.1986).

Presumably, all Plaintiffs qualify for the DoL's "short test" for overtime exemptions because it appears that they were paid in excess of $250 per week. Under the short test for executive exemption, an exempt employee is one:

who is compensated *on a salary basis* at a rate of not less than $250 per week ... and whose primary duty consists of the management of the enterprise in which the employee is employed or of a customarily recognized department or subdivision thereof, and includes the customary and regular direction of two or more other employees therein ....

29 C.F.R. § 541.1(f).

Similarly, the "short test" for the administrative exemption exempts any employee who is compensated *on a salary ... basis* at a rate of not less than $250 per week ... and whose primary duty consists of the performance of [office or nonmanual work directly related to management policies or general business operations of his employer of his employer's customers], which includes work requiring the exercise of discretion and independent judgment.

29 C.F.R. § 541.2(e)(2).

The FLSA does not define the § 213(a)(1) exemptions. However, the DoL provides a test for determining whether an employee is a "bona fide executive employee." [5] The test requires that (1) executives be paid on a "salary basis;" (2) that their primary duty consist of management of a recognized department of government; and (3) that they customarily and regularly direct the work of two or more employees. 29 C.F.R. § 541.119(a).

**5.** This test is essentially the same for the administrative capacity employee exemption provided for

The DoL considers an employee to be paid on a salary basis if:

he regularly receives each pay period on a weekly, or less frequent basis, a predetermined amount constituting all or part of his compensation, which amount is not subject to reduction because of variations in the quality or quantity of the work performed. Subject to the exceptions provided below, the employee must receive his full salary for any week in which he performs any work without regard to the number of days or hours worked. This policy is also subject to the general rule that an employee need not be paid for any workweek in which he performs no work.

29 C.F.R. § 541.118(a).

In interpreting § 541.118(a), the Supreme Court has followed the Secretary of Labor's determination that the salary basis test denies exempt status when employees are covered by a policy that permits disciplinary or other deductions in pay as a practical matter. *See Auer v. Robbins,* 519 U.S. 452, 117 S.Ct. 905, 910, 137 L.Ed.2d 79 (1997). The standard is met if there is either an actual practice of making such deductions or an employment policy that creates a significant likelihood of such deductions. *Id.* In the absence of actual deductions, there must be a clear and particularized policy which effectively communicates there will be deductions made in specified circumstances. *Id.*

Plaintiffs argue that Defendant has a policy that creates a "significant likelihood" of deductions in a captain's pay for disciplinary or other reasons. For example, Fire Chief Thomas acknowledged that if captains are late by only a few minutes after roll call at 8:00 a.m., consistent with established policy and practice, their pay is docked for disciplinary reasons.

However, Defendant emphasizes it does not have a "clear and particularized policy which effectively communicates there will be deductions made in specified circumstances." Defendant argues that its written policy does not allow any unlawful deductions in pay.

in § 213(a)(1).

**Exempt Personnel**

Exempt Personnel receive a predetermined salary regardless of hours worked and are not eligible for overtime pay.

Periods of absence not exceeding one full workday shall be credited as a day worked. Approval for such absences shall be granted by the appropriate Department or Division Head.

Absences in excess of one full workday shall be charged as vacation, sick, or other leave as appropriate.

City of Charleston Personnel Policy Number 8–1–0.

The City of Charleston Employee Handbook provides that disciplinary action, dismissal, or suspension may result from excessive tardiness. (City Employee Handbook at pp. 10 and 12). Presumably, all fire fighters are at least nominally covered by the employee handbook. However, neither the handbook nor any personnel policy effectively communicates that a captain is subject to disciplinary deductions in pay for tardiness, since "it is perfectly possible to give full effect to every aspect of the manual without drawing any inference of that sort." *Auer,* 117 S.Ct. at 910.

The comments of Chief Thomas and others, without evidence of actual deductions in captains' pay for tardiness, is not sufficient for purposes of·summary judgment to establish that Defendant has a policy of disciplinary deductions for tardiness.

Plaintiffs also argue the captains are subject to suspension without pay for 19 hours, and have actually been suspended, for violating fire department orders and directives regarding uniform inspections, equipment usage, proper gear, and other matters. Although captains have been suspended, Defendant contends the suspensions were permissible as a penalty for violations of safety rules of major significance. *See* 29 C.F.R. 541.118(a)(5) (carving out an exception to § 541.118(a) for penalties imposed for infractions of safety rules of major significance).

Both parties have presented conflicting evidence concerning whether the safety violations for which suspensions were imposed constituted "safety rules of major significance." Because the evidence presents material questions of fact, the court cannot conclude that Defendant has an impermissible policy of disciplinary deductions for captains which indicates they are not salaried employees.

Plaintiffs also argue there are other indications that captains are paid on an hourly basis and not salaried, including that the work requirements covering fire fighters and engineers are essentially the same as those applicable to captains. Allegedly, they work the same hours, receive the same regular and overtime pay, and are disciplined the same. *See Thomas v. County of Fairfax, Virginia,* 803 F.Supp. 1142, 1151 (E.D.Va.1992), *aff'd* 16 F.3d 408 (4th Cir.1993).

However, as indicated above, at the very least a question of fact remains whether captains are disciplined in the same manner as fire fighters and engineers. Although there may be strong arguments that captains are not salaried employees, viewing the facts in the light most favorable to Defendant, questions of material fact remain.

Because the court cannot conclude that captains are not salaried, it need not address the remaining requirements of § 213(a)(1). Accordingly, Plaintiffs' motion for summary judgment with respect to their argument that Plaintiffs who are captains do not qualify for the executive or administrative exemption to overtime is denied.

### IV. Damages/Relief Requested

As indicated above, the issue of liability with regard to sleep time exclusions is decided in Plaintiffs' favor. However, Defendant disagrees with Plaintiffs' calculations of damages. Anticipating it would prevail on liability issues, Defendant did not address damages. Accordingly, the court will not further address the damages issues until the parties have had time to brief them.

### V. Conclusion

For the reasons stated above, summary judgment is granted to Plaintiffs on their argument that their sleep time should not have been excluded from their compensable hours. Plaintiffs are denied summary judgment on their argument that the § 213(a)(1) executive exemption to overtime payments does not apply to those Plaintiffs who are captains.

The parties are directed to brief the damages issues to the court within 60 days from receipt of this order.

It is therefore,

**ORDERED**, that Plaintiffs' Motion for Summary Judgment be **GRANTED** in part and **DENIED** in part.

**AND IT IS SO ORDERED.**